(No. 54186.—

JOSE A. ESPINOSA, Appellee, v. NORFOLK AND
WESTERN RAILWAY COMPANY, Appellant.

*Opinion filed September 30, 1981.*

112

Edward J. Kionka, of Columbia, and Pope & Driemeyer, of Belleville (Thomas W. Alvey, Jr., of counsel), for appellant.

John T. Pierce, Jr., of Paul L. Pratt, P.C., of East Alton, for appellee.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Paul B. O'Flaherty, Jr., of counsel), for *amici curiae* Atchison, Topeka & Santa Fe Ry. Co. *et al.*

Edward W. Cleary, of Scottsdale, Arizona, and Paul L. Pratt, of East Alton, for *amici curiae* Brotherhood of Maintenance of Way Employees *et al.*

John J. Naughton, of Henslee, Monek & Henslee, of Chicago, for *amicus curiae* United Transportation Union.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is an action for damages under the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (1976)) in which the sole issue before us is whether the trial judge's denial of defendant's motion to dismiss on *forum non conveniens* grounds constituted an abuse of discretion.

Plaintiff, Jose A. Espinosa, was employed by defendant, Norfolk and Western Railway Company, as a section foreman in its Melvindale, Michigan, yards. Melvindale is a Detroit suburb located some 530 miles from Edwardsville, the county seat of Madison County, Illinois. While so

employed plaintiff was injured when his foot and leg went through planking covering the platform of a subsurface scale in the railroad yards. Plaintiff, who resided in the Detroit area, reported the injury to his supervisor and sought treatment from a medical group in Allen Park, Michigan, which served the railroad as the company doctors. Plaintiff was hospitalized twice while in their care, but his condition worsened. He was then referred by his union representative to an orthopedic specialist, Dr. George Schoedinger of St. Louis, Missouri. Dr. Schoedinger diagnosed a lumbar disc condition, performed surgery in St. Louis on plaintiff's low back and examined him periodically in his St. Louis office during the following 14 months.

The union representative also referred plaintiff to his present counsel, the regional attorney for the Brotherhood of Maintenance of Way Employees. Plaintiff's attorney offices in East Alton, Illinois, located in Madison County, and suit was filed against the railroad in that county. The railroad's motion to dismiss, predicated on *forum non conveniens* grounds, was denied, and its later motion to reconsider that ruling on the basis of additional facts was also denied. Subsequently, after requesting and receiving a response from plaintiff, this court denied a motion for leave to file an original action for a writ of *mandamus* to compel dismissal of the Madison County complaint. The case was thereafter tried, and both preceding and during trial the railroad unsuccessfully renewed its motions. The bench trial resulted in a $275,000 judgment for plaintiff. The railroad appealed to the appellate court, which affirmed (87 Ill. App. 3d 1147), and we allowed its petition for leave to appeal.

Much evidence was submitted on the *forum non conveniens* issue in the form of affidavits, documents and testimony concerning the identity and place of residence of potential witnesses, the distance between the place of injury and place of filing suit, the cost of pretrial discovery trips to

Michigan, the inconvenience and additional cost to the defendant in trying a case so far from the site of occurrence, and the condition of the court dockets in Madison County Several references to the "Wabash Hospital Association" appear in this record. Although it also appears that Dr. Schoedinger was an "Association doctor," and plaintiff testified that he was a member of the Association and that it paid part of his hospitalization costs, there is no explanation of the purpose, type or manner of operation of the Association. Consequently its relevance, if any, to the issue before us cannot be determined.

It was established that, except for Dr. Schoedinger, all occurrence and post-occurrence witnesses resided in the Detroit area, although one witness had since retired and moved to Michigan's upper peninsula, some 450 miles from Detroit. Of those witnesses, three of the five members of plaintiff's crew who were present on the date of the accident testified at trial. Two other employees, the supervisor and a building foreman, testified concerning the condition of the scale platform. These witnesses were required to travel from Michigan to Madison County for one or more days of the trial. Prior to the occurrence in question here, plaintiff had been treated for back problems by four Michigan doctors. Though it apparently was later determined that those problems were not related to the occurrence or plaintiff's current condition, the railroad's attorneys investigated that possibility by discovery and deposition. While the Michigan doctors were not called as witnesses, the evidence deposition of one doctor was offered and admitted. In the course of the investigation and discovery process defendant's Madison County counsel made five trips to Michigan and communicated by mail and telephone with Michigan residents. Cost figures were disputed, but defendant's attorney testified to out-of-pocket expenses for these trips aggregating over $1,400 and that a locally occurring case could be prepared in about one-half

the time this case had required, thus substantially reducing defendant's legal expense.

Among the evidence relating to the claimed burden imposed upon the Madison County taxpayers and court system was defendant's exhibit No. 1 consisting of a list of FELA cases filed in that county during 1976, 1977 and 1978. Defendant's witness, Lyndia Glassgow, a St. Louis lawyer, testified that she had been employed by defendant to examine the records of the circuit clerk's office in Madison County and list selected FELA cases against railroads for those years, showing plaintiff's residence, place of injury, and lawyer so far as they could be ascertained from the record. Her resulting list showed a total of 438 such cases of which at least 156 involved injuries occurring outside the State of Illinois. In 83 of the 156 cases the plaintiffs resided in States other than Illinois. Of those cases involving both nonresident plaintiffs and non-Illinois places of injury, plaintiff's lawyer had filed 47. Several were from Mississippi, Texas and Ohio, although counsel for plaintiff testified that the Mississippi and Texas cases involved accidents occurring within three hundred miles of Madison County. He also testified that the greatest distance involved an injury occurring in Ohio, and that Detroit was the next most distant place of injury. He further testified that he was regional counsel for two railroad unions and could "sign up a case anywhere in the country," but his firm tried to limit itself to areas within 400 to 500 miles of the Alton airport. While not admitted to practice in Michigan, he and his firm members had, together with local counsel, filed and tried eight or nine cases there. Similarly, cases were filed and tried in other States, counsel testifying that the determining factor was the place where the significant medical treatment occurred. It was established by his testimony and an affidavit tendered as an exhibit that most of the cases his firm filed were settled, a few being transferred or dismissed. Only nine were tried to verdict during the three-

year period of 1976-78.

This court has considered the doctrine of *forum non conveniens* with some frequency in recent years, and many of those cases have involved FELA actions. Plaintiff's argument that the States are precluded by the Federal Constitution and statutes from applying the doctrine to FELA cases has been repeatedly urged and rejected in this court. *People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 521, implicitly recognized the propriety of applying the doctrine in a proper case, and this court in *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 159, in a decision unanimous on this point, expressly rejected the argument now made and held the doctrine could be applied by State courts in FELA cases. Our later decisions are in accord (see, *e.g., Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1; *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178), and we need not reconsider the issue here.

The railroad has its principal place of business in Virginia, and does business in Michigan and Illinois, among other States. Both States thus have jurisdiction under the FELA (45 U.S.C. §56 (1976)), and available courts, but *forum non conveniens* always assumes more than one forum with power to hear the case. (*People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 112, *cert. denied* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 99 S. Ct. 2052.) The inquiry thus centers upon which of multiple forums is most convenient under the facts of the case. This court has described the doctrine in *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514:

> "*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration. In the application of these basic considerations a court may decline jurisdiction of a case 'even though it may have

proper jurisdiction over all parties and the subject matter involved' (*Whitney v. Madden* (1948), 400 Ill. 185, 189, *cert. denied*, 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55), whenever it appears that there is another forum that can better 'serve the convenience of the parties and the ends of justice.' (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 606.)"

The factors relevant to consideration of a *forum non conveniens* motion were reviewed in *Giliberto,* where we quoted at some length from *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843:

"'If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *** The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not neccessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many

persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.' " (74 Ill. 90, 110-11.)

The court also there indicated that:

"Whether particular facts and circumstances warrant dismissal of a case on the ground of *forum non conveniens* rests primarily within the discretion of the trial court. The court's decision will be reversed on review if it can be said that in deciding as it did there was an abuse of discretion. *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 4; *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 606; *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 159; *Whitney v. Madden* (1948), 400 Ill. 185, 190." (74 Ill. 2d 90, 110.)

See, too, Restatement (Second) of Conflict of Laws § 84(b) and Reporter's Note (1971).

We approved in *Giliberto* (74 Ill. 2d 90, 111) the statement from *Gilbert* that unless the balance of the relevant factors is strongly in favor of defendant, plaintiff's choice of forum should rarely be disturbed. The Restatement views plaintiff's right to select the forum as one of the two most important factors to be considered. (Restatement (Second) of Conflict of Laws § 84(c) (1971).) The second factor emphasized by the Restatement and many cases is the availability of an alternative forum. (Restatement (Second) of Conflict of Laws § 84(c) (1971); Annot., 60 A.L.R.3d 964, 982-85 (1974).) The Michigan forum was, of course, available here at the time of the rulings on the motions to dismiss in this case, and the question is whether the trial judge's denial of the motion can fairly be charac-

terized as an abuse of discretion.

As earlier noted in our *Giliberto* quotation, and in *Fender*, the effect of this type of litigation upon local residents and facilities is a significant consideration. Do such cases contribute to court congestion? Is the disposition of cases unreasonably delayed? An informational pamphlet, apparently intended for prospective jurors or court visitors, was admitted into evidence as plaintiff's exhibit No. 6. Its text had been written by the trial judge, and he stated the statistics were about a year or a year and a half old (p. 2). It indicates some 53,000 cases were filed annually in the Madison County circuit court, "approximately 900 of which will be major Civil Jury cases involving millions of dollars"; that "Although Madison County ranks fifth in population in the state, for the past three years it has been first in the state, outside of Cook County, in the number of Civil Jury trials"; that most of the 53,000 cases are "disposed of and completed during the year in which they are initiated" (p. 4); that some 3,000 jurors are called annually (p. 2), and that each judge in the civil division has some 400 cases on his docket (p. 6), of which about 80% will be settled before verdict. Plaintiff's counsel testified that while the trial of this case commenced about 20 months after the filing date, he believed the parties, if prepared, could go to trial before this trial judge in as little as 14 months from filing date. Defendant points out, however, that the 1977 annual report of our administrative director to this court lists the average time elapsing between filing and verdict for those Madison County cases terminated by jury verdict as 30.3 months. The 1978 report (this case was tried in January 1979) indicates the elapsed time between filing and jury verdict had increased to 32.3 months, the 1979 report shows a 31.9-month period, and the unpublished 1980 figures are 32.4 months. Case filings in Madison County have increased in recent years (as is generally true throughout the State) with the 742 law jury cases over $15,000 filed in 1976 having

expanded to 1,025 in 1979, dropping to 907 in 1980. 1976, 1977, 1978 and 1979 Annual Reports of the Administrative Director to the Supreme Court of Illinois.

The parties have discussed at considerable length their views of the several factors noted in *Giliberto* as relevant to a determination of *forum non conveniens* questions. Rather clearly favoring defendant's position, in our judgment, are the facts of plaintiff's nonresidence, that the injury occurred in Michigan more than 500 miles from the present forum, that not a single witness is subject to compulsory process in Illinois, and that the Michigan courts and process are available to plaintiff. Nor can it be disputed that, to some extent, the Illinois trial subjected defendant to greater expense and inconvenience. Similarly, we believe the filing and trial of this action in Madison County imposed an additional and unwarranted burden upon its judicial system and its taxpayers. The added burden of a single case is, of course, not great, but we have before us the fact of the filing of a substantial volume of cases involving nonresident plaintiffs and out-of-State injuries. We neither hold nor imply that all of those cases have as little connection with Illinois as this one, but we cannot ignore the not-insubstantial increase in the time lapse from filing to verdict in Madison County law jury cases over $15,000—an increase from 26 months in 1976 to 32.3 months in 1980.

In *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 6, this court stated: "A significant consideration in ruling upon such a motion is, of course, the condition of the calendar in the forum in which the action is pending." The court there characterized as "very serious" an average delay of 21.7 to 22.5 months from date of filing to date of verdict. (49 Ill. 2d 1, 6.) Courts generally have shared a concern "in protecting finite judicial resources" and the efficient functioning of their judicial systems, so that they are not impeded by nonresident litigation to the extent that their availability to local citizens is impaired or diminished.

*Silver v. Great American Insurance Co.* (1972), 29 N.Y.2d 356, 278 N.E.2d 619, 328 N.Y.S.2d 431; *Outboard Marine Corp. v. Superior Court* (1976), 59 Cal. App. 3d 434, 443, 130 Cal. Rptr. 642, 646 (concurring opinion); Annot., 60 A.L.R.3d 964, 995-98 (1974).

In these times of constantly increasing litigation (the 1979 Administrative Director's report indicates a total of 3,831,957 cases filed in this State as contrasted with 3,464,747 in 1976 or an increase of nearly 100 cases per judge), delay in disposing of cases is a critical factor. It is, of course, elementary that, as more cases are filed, delay in disposition will increase unless facilities and personnel are also increased. And, if facilities and personnel are increased, budgets, appropriations and taxes must likewise expand.

The high volume of nonresident FELA cases filed in Madison County, coupled with the frequency with which we are asked to permit the filing of original *mandamus* actions to vacate denials of *forum non conveniens* motions, seems to support Mr. Justice Jackson's observations in his concurring opinion in *Miles v. Illinois Central R.R. Co.* (1942), 315 U.S. 698, 706-07, 86 L. Ed. 1129, 1135, 62 S. Ct. 827, 831-32:

> "[T]he real issue is whether a plaintiff with a cause of action under the Federal Employers' Liability Act may go shopping for a judge or a jury believed to be more favorable than he would find in his home forum. An advantage which it is hoped will be reflected in a judgment is what makes plaintiffs leave home and incur burdens of expense and inconvenience that would be regarded as oppressive if forced upon them. And that is what makes railroads seek injunctions such as this one.
>
> The judiciary has never favored this sort of shopping for a forum. It has sought to protect its own good name as well as to protect defendants by injunctions against the practice of seeking out soft spots in the judicial system in which to bring particular kinds of

litigation. But the judges with lawyerly indirection have not avowed the interest of the judiciary in orderly resort to the courts as a basis for their decision, and have cast their protective doctrines in terms of sheltering defendants against vexatious and harassing suits. This judicial treatment of the subject of venue leads Congress and the parties to think of the choice of a forum as a private matter between litigants, and in cases like the pressent obscures the public interest in venue practices behind a rather fantastic fiction that a widow is harassing the Illinois Central Railroad. ***

[A]ll choices of tribunal are commonly used by all plaintiffs to get away from judges who are considered to be unsympathetic, and to get before those who are considered more favorable; to get away from juries thought to be small-minded in the matter of verdicts, and to get to those thought to be generous; to escape courts whose procedures are burdensome to the plaintiff, and to seek out courts whose procedures make the going easy."

We would add that ordinarily plaintiffs' zeal in those respects is matched only by defendants' efforts in seeking to avoid such fora.

We recognize that plaintiff's right to select the forum is a substantial one which, as we observed in *Giliberto*, should not be disturbed unless the balance strongly favors defendant. Too, plaintiff, in making a decision, need not disregard the fact that the history of similar litigation in a possible forum augurs more favorably for him than other possible fora, although that factor is not one which we may consider. (*Hemmelgarn v. Boeing Co.* (1980), 106 Cal. App. 3d 576, 585, 165 Cal. Rptr. 190, 195, *St. Louis-San Francisco R. Co. v. Superior Court* (Okla. 1955), 290 P.2d 118.) We emphasize also that it is not our intent to in any manner interfere with plaintiff's choice of counsel. But those rights, important as they are, cannot be permitted to override the public interest in, and need for, an orderly, efficiently operated judicial system. (*Horn v. Rincker* (1981), 84 Ill. 2d

139, 150-51; *People ex rel. Campagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 112-13, *cert. denied* (1979), 441 U.S. 936, 60 L. Ed. 2d 660, 99 S. Ct. 2052; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511; *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1; *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178; *Carr v. Bio-Medical Applications of Washington, Inc.* (D.C. 1976), 366 A.2d 1089; *Civic Southern Factors Corp. v. Bonat* (1974), 65 N.J. 329, 322 A.2d 436; *Safeway Stores, Inc. v. Martin* (Okla. 1974), 530 P.2d 131; *Atchison, Topeka & Santa Fe Ry. Co. v. District Court* (Okla. 1956), 298 P.2d 427, *cert. denied* (1956), 352 U.S. 879, 1 L. Ed. 2d 80, 77 S. Ct. 101; *Norman v. Norfolk & Western Ry. Co.* (1974), 228 Pa. Super. 319, 323 A.2d 850.) Of particular interest, considering the circumstances before us, is the January 23, 1981, order of the United States Court of Appeals for the Seventh Circuit in *Louisville & Nashville Railroad Company v. Beatty*, Nos. 80—2604, 80—2605, and 80—2606. That order awarded writs of *mandamus* directing the trial judge in this case, who had subsequently been appointed to the United States District Court for the Southern District of Illinois, to transfer to other districts three FELA cases. In each of those cases the injury occurred in Kentucky or Ohio, and the witnesses, as in the case before us, resided outside Illinois, and thus beyond the reach of a subpoena from the forum court. Judge Beatty denied motions to transfer, believing that the "inconvenience shown did not outweigh the plaintiff's privilege of choosing his forum." In awarding *mandamus* and ordering transfer, the court of appeals noted that "other than the propriety of venue in the Southern District of Illinois, the case has no nexus with that district except for the residence of plaintiff's counsel." It concluded that denial of the motions was "so clear and gross an abuse of discretion as to be grounds for mandamus relief."

Given the circumstances of this case involving a plain-

tiff residing and an accident occurring hundreds of miles from Madison County, witnesses, none of whom are subject to Illinois subpoenas and all but one of whom also live hundreds of miles from the trial site, the availability of the Michigan courts and process, the additional expense to defendant and the added burden upon Madison County courts and personnel, we have no doubt that denial of a motion to dismiss upon *forum non conveniens* grounds would constitute an abuse of discretion. We have concluded, however, not to reverse the judgment in this case for several reasons. The statistics we have cited from the annual report of our administrative director indicating the extent of the increasing delay in disposition of Madison County law jury cases were not before the trial court, nor were the later figures even available at the time the trial judge ruled on the motions. Too, there is no argument here as to liability or the amount of damages. And, furthermore, this court did deny a pretrial application for leave to file an original action to vacate denial of the *forum non conveniens* motion. While our denial is ordinarily meaningless in a consideration of an alleged error on appeal, it is not totally irrelevant here where, by reversing, we would be punishing plaintiff for subjecting the witnesses and defendant to expense and inconvenience which we could have prevented but did not. While a plaintiff selecting an unnatural forum takes a calculated risk of reversal (*Adkins; Price v. Atchison, Topeka & Santa Fe Ry. Co.* (1954), 42 Cal. 2d 577, 268 P.2d 457, *cert. denied* (1954), 348 U.S. 839, 99 L. Ed. 661, 75 S. Ct. 44; Restatement (Second) of Conflict of Laws § 84(c) (1971)), that reversal ought not to occur where it would result in part from facts not presented to the trial judge.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*