MARSHALL FOSTER, Plaintiff-Appellee, *v.* CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellant.

Fifth District No. 82—471

Opinion filed May 23, 1983.

KASSERMAN, J., specially concurring.

JONES, J., dissenting.

James P. Daley and George H. Brant, both of Chicago, for appellant.

Roy W. Strawn and Paul L. Pratt, P.C., both of East Alton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

We granted defendant's petition for leave to appeal under the provisions of Supreme Court Rule 306(a)(1)(ii) (87 Ill. 2d R. 306(a)(1)(ii)) from an order of the trial court which denied defendant's motion to dismiss plaintiff's complaint for *forum non conveniens.*

Relevant facts are gathered from the pleadings and the exhibits attached thereto. Plaintiff is an employee of defendant railroad. His complaint for damages for personal injury was filed in Madison County, Illinois. It alleges that on July 28, 1981, he was injured while on the job at defendant's Clinton, Iowa, car shops and that such injuries were compensable under the provisions of the Federal Employers' Liability

Act (FELA) (45 U.S.C. sec. 51 *et seq.* (1976)). Plaintiff is, and was at the time of his alleged injury, a resident of Clinton, Iowa, which is 270 miles distant from Edwardsville, the county seat of Madison County. Defendant railroad is a Delaware corporation with its principal office in Chicago. It has tracks and facilities in both Clinton, Iowa, and Madison County, Illinois, and conducts business at both places. Three witnesses who could testify regarding the accident are William Marcum of Fulton, Whiteside County, Illinois, a city across the Mississippi River from Clinton; Paul Heister of Maquoketa, Iowa, a city approximately 35 miles northwest of Clinton; and L.A. Bengston of Clinton. Following the accident, plaintiff received medical treatment and, subsequently, underwent an operation upon his back. Five doctors were involved in plaintiff's post-accident treatment, one at Davenport, Iowa, three at Dubuque, Iowa, and one at Clinton. Plaintiff's attorney has his office in Madison County, Illinois. Information concerning the time and expense of traveling from Clinton, Iowa, to Edwardsville, Illinois, was furnished by defendant as well as information regarding case filings and dispositions in the circuit court of Madison County. There is some indication in the record that a rehabilitation expert from Chicago would testify for plaintiff at trial.

In its order denying defendant's motion, the trial court found:

"1. That Clinton, Iowa is about 270 miles from the county seat of Madison County, Illinois, and that such distance in this case would not be unduly burdensome.

2. That the only eyewitness to the accident which is the subject matter of the lawsuit resides in Fulton, Illinois. That a rehabilitation expert from Chicago is likely to be a witness. That defendant's attorneys and John H. Caster, who signed defendant's affidavit attached to their motion are all from Chicago. That plaintiff's attorneys are from Madison County, Illinois. That Madison County would not appear to be substantially less accessible than the forum suggested by the defendant. [Clinton, Iowa or Whiteside County, Illinois.]

3. That a view of the scene of the occurrence would mean nothing to the jurors and it is not claimed to be an important factor by any of the parties to this case.

4. That the inventory of cases in the category of this case (law over 15,000-Jury) in Madison County is reducing in the last three (3) years, and that there is no hardship or congestion created by this lawsuit having been filed in Madison County.

5. That considering the foregoing, and the argument of counsel, their briefs and affidavits, and the cases cited and criteria to

be considered, the motion should be denied."

Upon the foregoing facts, the parties base their arguments in favor of and in opposition to the motion. The principal cases cited and discussed in the briefs are *Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 427 N.E.2d 111, *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 383 N.E.2d 977, *cert. denied* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 99 S. Ct. 2052, *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729, *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839, and Louisville & Nashville R.R. Co. v. Beatty (7th Cir. 1980), Nos. 80—2604, 80—2605 and 80—2606 (unpublished order). We have examined this case according to the principles discussed in these authorities and conclude that the trial court did not abuse its discretion in denying the defendant's motion to dismiss.

■ Our supreme court has stated that unless the balance of relevant factors to be analyzed in a motion to dismiss on *forum non conveniens* grounds lies strongly in favor of the defendant, the plaintiff's selection of a forum should not be disturbed. (*Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 119, 123, 427 N.E.2d 111, 115, 117.) Among those factors are the relative ease of access to possible sources of proof, the availability of compulsory process, the cost of transportation for witnesses, and the possibility of view of premises, should it be appropriate, as well as the congestion of the court system selected by the plaintiff. *Espinosa; Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843.

In *Espinosa,* it was held that the facts presented in that case would have compelled dismissal of the action on *forum non conveniens* grounds had all relevant information been presented to the trial court. There, the accident which was the subject of the plaintiff's FELA action took place 530 miles from Edwardsville, where he filed suit. No witnesses were subject to Illinois subpoenas and the supreme court took notice of statistics indicating an increasing time period required to litigate a case in the circuit court of Madison County.

■ By way of contrast, the accident in the case at bar took place approximately half as far from Edwardsville as did the accident in *Espinosa.* Moreover, a potentially significant occurrence witness resides in Illinois, and the defendant's principal office, another possible source of information, is located in this State as well. While we acknowledge that this action was brought in the same circuit court found in *Espinosa* to be subject to a "very serious" delay in processing cases, and that the Iowa forum is available to the plaintiff, the balance of factors is not nearly as strongly in favor of the defendant as it was in *Es-*

*pinosa.* We cannot say that this balance so strongly favors the defendant that the trial court's decision to enforce the plaintiff's choice of forum was an abuse of discretion. Accordingly, its order is affirmed and this cause is remanded to the circuit court of Madison County for further proceedings on the plaintiff's complaint.

Affirmed and remanded.

JUSTICE KASSERMAN, concurring:

Although I concur in the results reached by the author of the opinion in this cause, it is my opinion that the courts have failed to adequately protect an injured worker's prerogative to select a forum in suits filed under the Federal Employers' Liability Act (FELA) (45 U.S.C. sec. 51 *et seq.* (1976)) and the Jones Act (46 U.S.C. sec. 688 (1976)). Both Federal statutes purport to grant an injured employee unlimited authority to select the forum for his suit against his employer.

Historically, this court has recognized that a litigant's right to select a forum under both the FELA and the Jones Act are subject to the application of the doctrine of *forum non conveniens.* However, it has also been recognized that this right cannot be overcome by a mere balance of convenience. See *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 152 N.E.2d 634, as limited by *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 195 N.E.2d 634; *McKinney v. Hougland Towing Co.* (1969), 109 Ill. App. 2d 99, 248 N.E.2d 322.

Defendant relies on *Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 427 N.E.2d 111, in support of its argument that venue should have been declined by the trial court; however the supreme court there recognized that "plaintiff's right to select the forum is a substantial one which *** should not be disturbed unless the balance strongly favors defendant." 86 Ill. 2d 111, 123, 427 N.E.2d 111, 117.

It is noteworthy that in addressing this issue in recent cases, the courts uniformly have relied on *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839, and *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 383 N.E.2d 977, *cert. denied* (1979), 441 U.S. 936, 60 L. Ed. 2d 660, 99 S. Ct. 2052. Defendant in the instant case urges that these two decisions require a reversal of the trial court. In this regard, however, both *Gilbert* and *Giliberto* reasonably could be said to afford a plaintiff less freedom in selecting a forum because neither was a case arising under either the FELA or Jones Act. When consideration is given to a plaintiff's statu-

tory right to select a forum under either the FELA or the Jones Act, even more deference should be given to his selection of the forum. This rationale has been adopted by courts in the past when they have spoken of the need for sheltering defendants against vexation and harassment when determining the propriety of a forum that has been selected by the plaintiff in a FELA or Jones Act suit. It is my opinion that a plaintiff's selection of venue should not be disturbed unless it can be shown that plaintiff would thereby be granted some advantage at trial.

Additionally, underlying most appeals resulting from the trial court's refusal to decline jurisdiction in FELA and Jones Act cases is the inference, at the very least, that plaintiff is guilty of "forum shopping." The plain answer to such a contention is, in my opinion, well stated by our supreme court in *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 152 N.E.2d 385, where the court stated:

> "If it is 'shopping' for a plaintiff to bring suit in a great metropolis where a large verdict is anticipated, why is it not also 'shopping' for a defendant to attempt to have the case dismissed on the ground that it should have been brought in a small community where the defendant anticipates a smaller verdict would result." (14 Ill. 2d 144, 174, 152 N.E.2d 385, 400.)

It is my conclusion that such considerations should have no place in determining the issue raised by the instant appeal.

Finally, in the numerous interlocutory appeals that have resulted from the issue raised in the instant case as well as the recent decisions on such issues, great pains have been taken to provide administrative data designed to indicate that the forum selected by the plaintiff results in an undesirable amount of litigation in the county selected. The paucity of appeals by plaintiffs in cases where the trial court has declined jurisdiction of FELA and Jones Act cases seems to suggest that such cases are not creating an unmanageable case load in the eyes of the resident judiciary.

Therefore, although I concur with the decision reached by the author of the opinion in the case at bar, for the reasons stated above, I would emphasize that plaintiff's choice of forum should not be disturbed in the absence of a showing of some resulting trial advantage to plaintiff.

JUSTICE JONES, dissenting:

I respectfully dissent.

This case is so closely akin upon its facts to *Espinosa* that if the names of the parties and the locale of the accident were substituted, the *Espinosa* opinion would serve as the opinion in this case and would

conclude with a finding that the denial of the motion to dismiss upon *forum non conveniens* grounds constituted a breach of discretion.

In my opinion the majority and specially concurring opinions have overlooked the salient feature in the *Espinosa* opinion. That feature is the concern, which arises from public policy considerations, for the burden being placed upon Illinois courts, particularly that of Madison County, by the crescendo of FELA and Jones Act cases filed by nonresidents.

> "Courts generally have shared a concern 'in protecting finite judicial resources' and the efficient functioning of their judicial systems, so that they are not impeded by nonresident litigation to the extent that their availability to local citizens is impaired or diminished. [Citations.]" (*Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 121-22, 427 N.E.2d 111, 116.)

The court in *Espinosa* was mindful of the concern expressed in the majority and specially concurring opinions for the relevant factors in the selection of a forum that were set forth in *Gulf Oil Corp. v. Gilbert*, including the distance from the situs of the accident to the forum and the plaintiff's right of selection. But even a cursory reading of the case shows that the factors expressed in *Gulf Oil Corp. v. Gilbert* were of secondary concern in the court's decision. After discussing those factors the court said,

> "But those rights, important as they are, cannot be permitted to override the public interest in, and need for, an orderly, efficiently operated judicial system. [Citations.]" 86 Ill. 2d 111, 123-24, 427 N.E.2d 111, 117.

The supreme court in *Espinosa* buttressed the public policy basis of its decision with certain statistics relating to the filing, disposition, lapse of time between filing and jury verdict, and backlog of law jury cases over $15,000 for Madison County as reported by the Administrative Office of Illinois Courts to the supreme court. It noted the increasing length of time between filing and jury verdict and concluded on the point by relating that the unpublished figures for 1980 show an increase in the time lapse to 32.4 months. This figure can now be updated with the 1981 report of the Administrative Director, which shows that Madison County law jury cases over $15,000 had an average time lapse between filing and jury verdict of 34.0 months. (Administrative Office of the Illinois Courts 1981 Annual Report to the Supreme Court of Illinois, at 166.) At pages 130 and 131 of the same 1981 report, it is shown that for law jury cases of $15,000 Madison County inventory increased by *719* and that for all cases of all types the Madison County inventory increased by *1,779*.

Quotation of the statistics alone suffices to explain the reason for the holding in *Espinosa*. The circuit court of Madison County, along with many other Illinois courts, is being inundated with cases. The Illinois judicial system is scarcely able to cope with the cases of its own citizens. Cases of distant origin filed in Illinois courts by citizens of other States command much time and attention of our judicial resources, divert a large amount of Illinois taxpayers' dollars to their resolution, and require the services of many jurors, all for cases that have little or no connection with Illinois citizens. As the court said in *Espinosa*:

> "In these times of constantly increasing litigation (the 1979 Administrative Director's report indicates a total of 3,831,957 cases filed in this State [for 1981 the figure is 4,256,758] as contrasted with 3,464,747 in 1976 or an increase of nearly 100 cases per judge), delay in disposing of cases is a critical factor. It is, of course, elementary that, as more cases are filed, delay in disposition will increase unless facilities and personnel are also increased. And, if facilities and personnel are increased, budgets, appropriations and taxes must likewise expand." 86 Ill. 2d 111, 122, 427 N.E.2d 111, 116-17.

An update of the statistics on court backlog and case dispositions render even more telling the following language from *Espinosa*:

> "[W]e believe the filing and trial of this action in Madison County imposed an additional and unwarranted burden upon its judicial system and its taxpayers. The added burden of a single case is, of course, not great, but we have before us the fact of the filing of a substantial volume of cases involving nonresident plaintiffs and out-of-State injuries." (86 Ill. 2d 111, 121, 427 N.E.2d 111, 116.)

In addition to the burden upon the circuit court, the "unwarranted burden" has now been imposed upon this court and, in view of the disposition made by the majority and the specially concurring opinions, the same "unwarranted burden" will necessarily be imposed upon the supreme court. In this same vein, it is safe to say that the impact of the filing of cases involving nonresident plaintiffs and out-of-State injuries upon our appellate and supreme courts has been profound. The time devoted to such cases by the Illinois Supreme Court has necessarily resulted in the denial of review of cases of Illinois citizens.

I would dismiss plaintiff's complaint on grounds of *forum non conveniens*.