(No. 57281.—

ELIAS TORRES *et al.*, Plaintiffs, v. ALFRED T. WALSH, Judge, *et al.*, Defendants.

*Opinion filed September 16, 1983.—Modified on denial of rehearing December 2, 1983.*

GOLDENHERSH, J., dissenting.

Alan C. Mendelson and Barry S. Grossman, of Chicago, for plaintiffs.

John R. Fielding, Special Assistant Attorney General, of Chicago, for defendant Alfred T. Walsh.

Johnson, Cusack & Bell, Ltd., of Chicago (Brian C. Fetzer and Thomas H. Fegan, of counsel), for defendants Thomas P. Lake *et al.*.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Anthony J. Alholm, of counsel), for defendant Memorial Medical Center.

Baker & McKenzie, of Chicago (Francis D. Morrissey and John T. Coleman, of counsel), for defendants Choon Bong Choi and Springfield Clinic Facilities, Inc.

Wildman, Harrold, Allen & Dixon, of Chicago (Mark C. Fedota and Marcia B. Orr, of counsel), for defendants Richard B. McCormick and Physicians Group Clinic, S.C.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Richard Childers, John M. Duczynski, and Thomas White, of counsel), for defendants Illinois, Inc., d/b/a Springfield

Community Hospital *et al.*

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French, Gilbert J. Rogers, and Robert S. Burtker, of counsel), for defendant Walter Wheelhouse.

Haskell & Perrin, of Chicago (Willis R. Tribler, of counsel), for *amicus curiae* Illinois Defense Counsel.

Winston & Strawn, of Chicago (Calvin Sawyier and James Fletcher, of counsel), for *amicus curiae* Illinois State Medical Society.

Kenneth Robbins, of Naperville, for *amicus curiae* Illinois Hospital Association.

George M. Elsener, Albert F. Hofeld, and Jeffrey W. Williams, of Chicago, and Howard H. Braverman, of Springfield, for *amicus curiae* Illinois State Bar Association.

Thomas L. Hayward, Jr., John F. McCarthy, and Robert A. Clifford, of Chicago, for *amicus curiae* Chicago Bar Association.

JUSTICE CLARK delivered the opinion of the court:

This action was brought in the circuit court of Cook County by Elias and Celia Torres seeking damages which resulted from an automobile collision on November 21, 1981, and from alleged medical malpractice following that accident which rendered Elias Torres a quadriplegic.

Plaintiffs' complaint alleges that on November 21, 1981, at 5:20 p.m. defendant Dale Palmer was operating his automobile negligently and collided with plaintiffs' automobile. It is alleged that the collision caused serious injury to both plaintiffs. This collision occurred on Interstate Highway 55 at or near the overpass on Toronto Road in Woodside Township of Sangamon County.

The plaintiffs' complaint alleges that plaintiff Elias

Torres was admitted to Springfield Community Hospital for treatment of his injuries resulting from the automobile collision and that the medical treatment rendered to plaintiff at the hospital was allegedly performed in a negligent manner. Springfield Community Hospital is located in Sangamon County. Defendant Memorial Medical Center is also located in Sangamon County.

The following physicians are named as defendants in this action: Walter Wheelhouse, M.D., Lyle Wacaser, M.D., Richard B. McCormick, M.D., Rosalino T. Figueras, M.D., Robert Vautrain, M.D., Choon Bong Choi, M.D., Steven J. Jackman, M.D., Thomas P. Lake, M.D., Charles H. Williams, M.D., and David J. Porter, M.D. All of them practice in Sangamon County.

The following nurses are named in the complaint as defendants: R. Bartmann, C.R.N.A., Susan Sclucu, R.N., M. Lucas, R.N., P. Culler, R.N., D. Austif, R.N., Karen Denny, R.N., John Dronsfield, R.N., and M. Schneider, R.N. All of them practice in Sangamon County.

Humana of Illinois, Inc., d/b/a Springfield Community Hospital, and Humana Management Systems, Inc., are also named as defendants in the action. Humana of Illinois, Inc., owns and operates Springfield Community Hospital. Humana Management Systems, Inc., is a data-processing service company and is not involved in patient care. It contracts with Springfield Community Hospital to provide accounting and data-processing services. The offices of C. T. Corporation System, a registered agent of defendants Humana of Illinois, Inc., and Humana Management Systems, Inc., are located in Cook County.

Elias and Celia Torres live in the vicinity of San Antonio, Texas. Defendant Dale Palmer lives in Auburn, Illinois, which is in Sangamon County.

Defendants requested that the trial court transfer the case to Sangamon County. The trial court found venue to

be proper in Cook County but ordered a transfer to Sangamon County. The order stated:

"1. The Court finds that venue is proper in Cook County, Illinois under Sections 2—101 and 2—102 of the Illinois Code of Civil Procedure.

2. The Court further finds that all defendants have agreed to waive service if this action is refiled in Sangamon County, Illinois.

3. That it is hereby ordered that plaintiffs' cause of action be and the same hereby is, transferred to Sangamon County, Illinois."

The plaintiffs then petitioned this court directly seeking writs of *mandamus* and prohibition or a supervisory order to compel the trial court to vacate its order and retain venue in Cook County. (Ill. Const. 1970, art. VI, secs. 4(a), 16; 87 Ill. 2d R. 381.) The issue before us is whether the trial court has the authority under the doctrine of *forum non conveniens* to transfer the lawsuit to another county when venue in Cook County is proper but inconvenient to the defendants and other interested parties.

Count I of the plaintiffs' complaint alleged that Elias Torres became a quadriplegic as the result of medical malpractice on an undisplaced fracture of his cervical spine after his admission to Springfield Community Hospital on November 21, 1981, following an automobile collision. Count II alleged that he underwent surgery on November 26, 1981, to repair a fractured patella, and that, applying the doctrine of *res ipsa loquitur,* he became a quadriplegic due to injuries to his cervical spine during that surgery, injuries that the plaintiff claims were the fault of someone at Springfield Community Hospital. Count III alleged a cause of action for Elias Torres against the driver of the automobile which collided with the plaintiffs' automobile on November 21, 1981. In count IV Celia Torres alleged a cause of action against all defendants for loss of her husband's consortium. Count V alleged a cause of action for Celia Torres against the driver of the automobile for her own

personal injuries.

Because an action may be brought in the county of the residence of any defendant when commenced in good faith (Ill. Rev. Stat. 1981, ch. 110, par. 2—101), and the residence of a corporation for purposes of venue is any county "in which it has its registered office or other office or is doing business" (Ill. Rev. Stat. 1981, ch. 110, par. 2—102), venue in the instant case is proper in Cook County.

The defendants assert that a writ of *mandamus* is not an appropriate vehicle for relief in the instant case. It is clear that if the trial court did not have the authority to transfer the case then a writ of *mandamus* would be an appropriate vehicle here but if the trial court did possess the authority then a writ of *mandamus* would be inappropriate since it will not lie "to direct the manner in which a judge is to exercise his discretion." *Chicago & North Western Transportation Co. v. Matoesian* (1981), 85 Ill. 2d 404, 406, citing *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 180.

We must determine whether the trial court has the authority to transfer the lawsuit when venue in Cook County is proper.

The doctrine of *forum non conveniens* has been recognized and employed by courts in this State for many years in cases involving other States. This court described the doctrine in *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511:

> "*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration. In the application of these basic considerations a court may decline jurisdiction of a case 'even though it may have proper jurisdiction over all parties and the subject matter involved' (*Whitney v. Madden* (1948), 400 Ill. 185, 189, *cert denied*, 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55), whenever it appears that there is another forum that can better 'serve the convenience of the parties and the ends of justice.' (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill.

2d 599, 606.) Factors to be considered in disposing of a motion to dismiss *forum non conveniens* include the relative capacities of the two courts to provide a fair trial, the relative inconvenience to witnesses and parties, and the burden placed upon the taxpayers and residents of the jurisdiction to which the cause of action is transported." 54 Ill. 2d 511, 514.

In *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839, the United States Supreme Court looked at whether a United States District Court had the inherent authority to dismiss a suit pursuant to the doctrine of *forum non conveniens*. The court said:

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. ***

* * *

Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to

his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." 330 U.S. 501, 507-09, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 842-43.

In the *Gulf Oil* case the United States Supreme Court recognized that the doctrine of *forum non conveniens* is a discretionary power which should be exercised only in exceptional circumstances when it has been shown that the interests of justice require a trial in a more convenient forum.

Courts in many of our sister States throughout the country have the statutory authority to transfer cases to other counties within the same State on the grounds of *forum non conveniens*, where the convenience of the witnesses and the ends of justice would be promoted.

See Alaska - Alaska Stat. sec. 22.10.030(d) (1982);
Arizona - Arizona Rev. Stat. Ann. sec. 12—406A (1982);
California - Cal. [Civ. Proc.] Code sec. 410.30 (1982);
Connecticut - Conn. Gen. Stat. sec. 51—347a (Supp. 1983);
Florida - Fla. Stat. Ann. sec. 47.122 (Supp. 1983);
Hawaii - Hawaii Rev. Stat. sec. 603—37 (1976);
Indiana - Ind. Code Ann. sec. 34—1—13—1 (1973);
Michigan - Mich. Stat. Ann. R. 403 (1982);
Minnesota - Minn. Stat. Ann. sec. 542.11 (1947);
Nebraska - Neb. Rev. Stat. sec. 25—410 (1979);
Nevada - Nev. Rev. Stat. sec. 13.050 (1979);
New Hampshire - N.H. Rev. Stat. Ann. sec. 507:11 (1968);
New York - N.Y. [Civ. Prac.] Law sec. 510:3 (Consol. 1976);
North Dakota - N.D. Cent. Code sec. 27—07.1—22 (1981);
Oregon - Or. Rev. Stat. sec. 14.110 (1981);

Utah - Utah Code Ann. sec. 78—13—9 (1977);
Virginia - Va. Code sec. 8.01—265 (1983);
Washington - Wash. Rev. Code sec. 4.12.030 (1962).

While in Illinois we are without any statutory authorization, we find that such authority to transfer a case under the doctrine of *forum non conveniens* exists at common law, and, therefore, statutory authorization is unnecessary as it only recognizes and codifies a right that previously existed at common law.

The doctrine of *forum non conveniens* originated in the common law of England which Illinois adopted as it existed "prior to the fourth year of James the First" (Ill. Rev. Stat. 1981, ch. 1, par. 801). " 'What the statute adopted was not just those precedents which happened to have already been announced by English courts at the close of the sixteenth century, but rather a system of law whose outstanding characteristic is its adaptability and capacity for growth. The common law which the statute adopted "is a system of elementary rules and of general judicial declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and usages of the country." *Kreitz v. Behrensmeyer*, 149 Ill. 495.' " (*People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520, 535.) Decisions of English common law courts are in force here (*People v. Lewis* (1940), 375 Ill. 330), and are followed to the extent that they apply to conditions and usages in this country. *Lasier v. Wright* (1922), 304 Ill. 130.

Some of the earlier English cases said that removal to another county might be had "for the necessity of an indifferent trial." (*Queen v. Inhabitants of County of Wiltz* (1705), 6 Mod. 307. Accord, *Rex. v. Cowle* (1759), 2 Burr. 834, 859, 97 Eng. Rep. 587, 602; *Sir Samuel Gerard's Case* (1705), Salk. 670; see *French v. Kent* (1662), Raym. 33, 83 Eng. Rep. 18.) It had been well established that when an impartial trial could not be obtained the court of

the King's Bench had the authority to transfer the trial to the next adjoining county. (1 Chitty, Criminal Law, at 201, 371, 494 (2d ed. 1841).) The doctrine further developed to include circumstances which in the discretion of the court serve the interests of justice where the witnesses resided at a great distance from the county where the venue was laid. In *Holmes v. Wainwright* (K.B. 1803), 3 East 329, 330, 102 Eng. Rep. 624, Lord Ellenborough said:

> "If the inconvenience of trying the cause in the one or the other county were balanced in any degree, we should not interfere with the acknowledged general right of the plaintiff to try his cause where any part of the cause of action arose; but as the defendant is willing to admit the only fact which exists within the venue now laid, all the convenience and justice of the case preponderates in favour of the application."

The court applied the *forum non conveniens* doctrine and transferred the case from London to Yorkshire.

This court has addressed the application of this common law doctrine of *forum non conveniens* on a number of occasions on an interstate basis, and it has been recognized that it is a proper mechanism by which to dismiss a case that has no practical connection to the forum. *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511; *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1; *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178; *Whitney v. Madden* (1948), 400 Ill. 185.

In *Cotton v. Louisville & Nashville Ry. Co.* (1958), 14 Ill. 2d 144, this court addressed the *forum non conveniens* issue in the context of a Federal Employers' Liability Act (FELA) case (45 U.S.C. sec. 51 *et seq.* (1976)). There the court said that *forum non conveniens* allowed the courts of this State to decline to exercise jurisdiction when the case arose beyond the State lines, provided that the defendant was able to show that plaintiff's choice of forum was made

only to harass the defendant. 14 Ill. 2d 144, 174.

This court said in *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 180, that an intent to harass can rarely be proved and that the court was not seeking to impose an unrealistic standard upon the defendants that would sterilize the doctrine. In *People ex rel. Chesapeake & Ohio Ry. Co.* this court said, "The statement in the *Cotton* case, 'that only where it is shown that plaintiff is motivated purely by vexation and harassment will an F.E.L.A. case be dismissed' is disavowed." (30 Ill. 2d 178, 180.) This court has since determined that policy is better served by inquiring whether another forum better serves the convenience of the parties and the interests of justice. *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514.

In *Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 125, the court found that the trial judge's denial of the defendant's motion to dismiss on *forum non conveniens* grounds in an interstate FELA action did constitute an abuse of discretion. In the text of the opinion the court again recalled the statement from the court's opinion in *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, *cert. denied* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 49 S. Ct. 2052, that "unless the balance of the relevant factors is strongly in favor of the defendant, plaintiff's choice of forum should rarely be disturbed." (86 Ill. 2d 111, 119.) We then said that in considering whether the case should have been dismissed it was appropriate to consider the availability of an alternate forum, access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties. 86 Ill. 2d 111, 116-21.

In *Horn v. Rincker* (1981), 84 Ill. 2d 139, this court, pursuant to our supervisory authority (Ill. Const. 1970, art. VI, sec. 16) made an intercircuit consolidation of three

causes of action that arose from the same occurrence and were pending in three separate venues. In *Horn* we reviewed the principles of the doctrine of *forum non conveniens* in determining whether to exercise our supervisory authority and, if so, in what manner. While we did not decide the case based upon the *forum non conveniens* doctrine, the consolidation of the three intrastate actions after an examination of the principles underlying the doctrine of fairness to the litigants and the effective administration of justice is an indication that we felt it necessary to see that the most appropriate forum should be the place in which those cases would be heard. .

When the doctrine of *forum non conveniens* is available in transferring a case from Springfield, Illinois, to St. Louis, Missouri, we feel that a case should be able to be transferred from Chicago to Springfield—two cities in the same State—under the same theory.

In 1929, it was noted in Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law,* 29 Colum. L. Rev. 1 (1929), that "the courts of this country have been for years applying the doctrine with such little consciousness of what they were doing as to remind one of Moliere's M. Jourdain, who found he had been speaking prose all his life without knowing it." While the doctrine has since been recognized and applied in interstate cases we feel we should recognize that the rationale underlying such applications is as valid on an intrastate as it is on an interstate basis. If the reasons for applying the doctrine in certain interstate situations are good ones and in the best interest of justice, and we believe they are, then such reasoning is also persuasive where a comparable situation exists within the boundaries of this State. *Horn v. Rincker* (1981), 84 Ill. 2d 139. See *Gulf Oil Co. v. Woodson* (Okla. 1972), 505 P.2d 484; *Quillin v. Hesston Corp.* (1982), 230 Kan. 591, 640 P.2d 1195; *Gonzales v. Atchison, Topeka & Santa Fe Ry. Co.* (1962), 189 Kan. 689, 371 P.2d 193.

We see no advantage in drawing artificial distinctions when no purpose is served in doing so. In recognizing the discretion of the trial court to dismiss a case within its jurisdiction when a more appropriate intrastate forum is available and when maintenance of the action in the original forum causes unnecessary hardship to the defendant and other interested parties, we hope to promote fair play between plaintiffs and defendants and discourage the incessant jockeying for a more sympathetic jury likely to come forward with a more substantial award.

In finding that the trial courts have such authority, we emphasize the factors to be taken into consideration in making the decision: the availability of an alternate forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties. We also caution our trial courts that unless those factors strongly favor the defendant, then the plaintiff should be allowed to exercise his choice in deciding in what forum to bring the case when venue is proper.

If there are sufficient factors that favor the plaintiff's choice of forum, then the defendant's inconvenience should not be considered, provided venue is proper. For unless the balance strongly favors the defendant, then the plaintiff should be able to exercise his statutory right to choose his forum.

In announcing our decision today, we are cognizant of amended House Bill 1082 — An Act to add Section 2—106—1 to the "Code of Civil Procedure." It provides that an action brought pursuant to a Federal law granting concurrent Federal and State jurisdiction shall not be dismissed or transferred by a court having venue "on the grounds that there is a more appropriate or convenient forum in another state, unless the action imposes a substantial burden on such court." Since the bill was defeated in

the Illinois Senate on June 28, 1983, we will not consider any inferences that could be drawn from such legislative language, other than such was not the intent of the Illinois Senate on June 28, 1983.

Because we have determined that the trial court did have the authority to grant an intrastate *forum non conveniens* motion, we find *mandamus* to be an inappropriate remedy in this case. Once we have concluded that the trial court did have the authority, the next question to be resolved is whether the trial court abused its discretion in granting the motion. However, *mandamus* is not the method by which this court reviews the exercise of a trial court's discretion. As this court said in *Chicago & North Western Transportation Co. v. Matoesian* (1981),. 85 Ill. 2d 404, *mandamus* "will [not] lie to direct the manner in which a judge is to exercise his discretion." (85 Ill. 2d 404, 406.) In *Matoesian* the court recalled the words of the court's opinion in *People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 520:

> " '[A] motion to dismiss based on *forum non conveniens* raises an issue which necessitates an exercise of discretion by the trial judge in ruling thereon. Such discretionary action of a trial judge cannot be reviewed or controlled by *mandamus* unless the judge refused to exercise his discretion at all ***.' (People ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. Clark* (1957), 12 Ill. 2d 515, 520.)" (85 Ill. 2d 404, 407.)

The court in *Matoesian* held that *mandamus* was not an appropriate remedy because the court could not, by *mandamus*, direct a circuit court judge how to act where there has been no showing that the judge either failed to act or had "frustrated the exercise of discretion by applying an erroneous rule of law." (85 Ill. 2d 404, 410.) The court reasoned in *Matoesian* that "[w]hether the judge erred in denying the motion [to dismiss an FELA action based on *forum non conveniens*], which constituted a discretionary act, is not a proper issue in a *mandamus* proceeding. *Man-*

*damus* is not designed to be a substitute for an appeal. (*Lara v. Schneider* (1979), 75 Ill. 2d 63, 64.)" (85 Ill. 2d 404, 409.) We do not, however, consider it inappropriate, in the exercise of our supervisory authority, to observe that the trial court, in transferring this cause, acted within the bounds of sound discretion.

Because we have found that the trial court had the discretion to grant or deny the intrastate *forum non conveniens* before it, we must deny the issuance of a writ of *mandamus*. Accordingly, the writ of *mandamus* is denied.

In conclusion, since this is the first pronouncement of this court allowing the intrastate application of the doctrine of *forum non conveniens,* we believe it is only equitable that we apply our holding to this case, the case of *Mesa v. Chicago & North Western Transportation Co.* (1983), 98 Ill. 2d 356 (which we remanded to the circuit court under our supervisory authority) and to all cases filed on or after September 16, 1983, the date on which the opinions in this case and the *Mesa* case were filed.

*Writ denied.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. There is no basis in statutory or case law for the transfer of this cause to Sangamon County, the circuit court was without authority to order it, and clearly *mandamus* should issue.

In reaching its conclusion the majority fails to consider the difference between jurisdiction and venue. The doctrine of *forum non conveniens* is grounded on the concept that courts may decline jurisdiction where, under the applicable general venue statute, jurisdiction could appropriately be exercised. Venue, however, deals with the matter of where within a jurisdiction the cause is to be heard. This court has consistently held that the determination of venue is for the legislature. *Chappelle v. Sorenson* (1957), 11 Ill. 2d 472; *Mapes v. Hulcher* (1936), 363 Ill. 227.

Illustrative of the difference between jurisdiction and

venue are the sources of the authority of the Federal courts to decline jurisdiction under the doctrine of *forum non conveniens* and to transfer venue in causes of action. In *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839, the Supreme Court approved the dismissal of a cause of action under the doctrine of *forum non conveniens*. The authority, however, for interdistrict transfers stems from title 28 U.S.C. section 1404(a) (1976), enacted subsequent to the adoption of the opinion in *Gulf Oil*, and recognizing that transfer to a more convenient venue may be effected only pursuant to statutory authority. See *Sohns v. Dahl* (W.D. Va. 1975), 392 F. Supp. 1208; C. Wright, Federal Courts sec. 44, at 164—65 (2d ed. 1970).

The order entered by the circuit court in this case further demonstrates the confusion which this opinion will cause. The order provides:

"2. The Court further finds that all defendants have agreed to waive service if, this action is refiled in Sangamon County, Illinois.

3. That it is hereby ordered that plaintiffs' cause of action and the same hereby is, transferred to Sangamon County, Illinois."

Obviously, these provisions are inconsistent. If the cause is transferred it proceeds without the requirement that any additional summonses be served. If, in fact, it purports to be a dismissal, requiring refiling and service of summons, it is clearly violative of the venue statute for the reason that transfer, rather than dismissal, is available even where wrong venue has been invoked.

The circuit court and the majority are in agreement that under section 2—102 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—102) venue is properly in Cook County. Citing English authorities dating from 1705, the majority concludes that the circuit court was vested under the common law with the authority to transfer the cause to another county. The majority overlooks the

fact that our statute adopted the common law of England as it existed prior to March 24, 1606. Decisions of the courts of England in 1705 and thereafter are not authority for the position which the majority takes.

The majority cites a number of jurisdictions which have, by statute, authorized what the circuit court did here. This further demonstrates that, absent statutory authority, the order was improper. Of the jurisdictions which have considered the question whether courts possess the authority, without statutory enactment, to effect intrastate transfer of causes, only two have found an inherent or common law power to do so. An examination of the opinions (see *Gonzales v. Atchison, Topeka & Santa Fe Ry. Co.* (1962), 189 Kan. 689, 371 P.2d 193; *Gulf Oil Co. v. Woodson* (Okla. 1972), 505 P.2d 484) shows that the authority is allegedly found in the acceptance of the common law in that jurisdiction, but it cannot be determined from either opinion the date at which the state of the common law is to be determined. Obviously it was not 1606 or the result would have been different.

I need not lengthen this dissent by pointing out the confusion which the utter disregard of the venue statutes evidenced by this opinion will cause in the administration of justice in this jurisdiction. To destroy in one stroke the stability created by a long history of deference to legislative governance of venue is an unfortunate mistake which should be immediately corrected.