(No. 69684.—

DIANNA BONER, Indiv. and as Special Adm'r of the Estate of Douglas Boner, Deceased, Appellee, v. PEABODY COAL COMPANY *et al.*, Appellants.

*Opinion filed February 22, 1991.—Rehearing denied April 1, 1991.*

MILLER, C.J., joined by HEIPLE, J., dissenting.

Thompson & Mitchell, of Belleville (William A. Schmitt and Mark S. Schuver, of counsel), for appellants.

Jeffrey I. Gehl and Thomas R. O'Bryan, of Levine & Brustin, of Chicago, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Dianna Boner (Boner) filed an 18-count complaint in St. Clair County on July 11, 1988, on behalf of Douglas Boner (Douglas) against Peabody Coal Company, Pea-

body Development Company, Peabody Holding Company, Inc. (hereinafter collectively referred to as Peabody), and Jimmy Bayer (Bayer). Boner seeks recovery for the injuries and death of her son, Douglas, which resulted when Douglas dove into a water-filled abandoned strip mine and struck his head on an underwater protrusion. Peabody allegedly owns, and Bayer allegedly leases, the property on which the incident occurred. The property is located in Equality, Illinois, in Gallatin County.

On August 12, 1988, and August 19, 1988, Peabody and Bayer, respectively, filed motions to transfer venue based on *forum non conveniens*. Defendants sought to transfer the cause to Gallatin County. The circuit court denied the motions on June 22, 1989. The Fifth District of the Appellate Court subsequently denied Peabody's petition for leave to appeal. Peabody then filed a petition for leave to appeal with this court (107 Ill. 2d R. 315), which was allowed. Bayer is not participating in this appeal.

The sole issue before this court is whether the circuit court abused its discretion in denying Peabody's motion to transfer venue based on *forum non conveniens*. (*Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 223.) The doctrine of *forum non conveniens* only comes into play when more than one forum exists with proper jurisdiction and venue over the parties and the subject matter of the cause of action. (*Bland,* 116 Ill. 2d at 223.) Under the doctrine of *forum non conveniens,* a court may decline to exercise jurisdiction over a case if it is more convenient to try the case in another forum with appropriate jurisdiction and venue, and would serve the ends of justice. (*Bland,* 116 Ill. 2d at 223.) *Forum non conveniens* is applicable on an intrastate, as well as interstate, basis. (*Torres v. Walsh* (1983), 98 Ill. 2d 338.) A circuit court has broad discretion in determining whether to transfer a cause of action to another jurisdiction

based on *forum non conveniens.* (*Bland,* 116 Ill. 2d at 223.) Such a decision will not be reversed on appeal unless the circuit court abused its discretion. *Bland,* 116 Ill. 2d at 223.

In deciding whether to grant a motion based on *forum non conveniens,* a court must balance the private interests affecting the convenience to the litigants with the public interests affecting the administration of the courts. (*Bland,* 116 Ill. 2d at 223-24.) The private interests include:

> " 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.' " (*Torres,* 98 Ill. 2d at 345, quoting *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843.)

(See *Bland,* 116 Ill. 2d at 224-25; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514.) The public interest factors include "the administrative difficulties flowing from court congestion; 'a local interest in having localized controversies decided at home'; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Bland,* 116 Ill. 2d at 224, quoting *Gulf Oil,* 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843.

In *Torres,* this court stressed that a plaintiff has a substantial right to select the forum in which to bring his or her case:

> "We also caution our trial courts that unless [the] factors strongly favor the defendant, then the plaintiff should be

allowed to exercise his [or her] choice in deciding in what forum to bring the case when venue is proper.

   If there are sufficient factors that favor the plaintiff's choice of forum, then the defendant's inconvenience should not be considered, provided venue is proper. For unless the balance strongly favors the defendant, then the plaintiff should be able to exercise his [or her] statutory right to choose [the] forum." *Torres,* 98 Ill. 2d at 351.

See *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 106.

Plaintiff's choice of forum, however, is entitled to less deference when the plaintiff is not a resident of the chosen forum:

   "The deference given to plaintiff's choice of forum is a factor which may be given more or less weight within the test, depending on whether the plaintiff is a resident of the forum selected. In deciding a *forum non conveniens* motion, a court is to take all the relevant factors into account, giving each factor, including plaintiff's choice of forum, proper deference or weight under the circumstances. If the plaintiff is foreign to the forum selected, the forum choice should be given less deference than it would be given if the plaintiff were a resident of the forum selected. The test, then, is whether the relevant factors, viewed in their totality, strongly favor transfer to the forum suggested by defendant." *Griffith,* 136 Ill. 2d at 108.

   In the case at bar, the property on which the incident occurred is in Equality in Gallatin County. Peabody has offices and active mining operations in St. Clair County. Peabody Coal Company's home office is in Henderson, Kentucky. The home offices of Peabody Holding Company, Inc., and Peabody Development Company are in St. Louis, Missouri. Bayer resides in Equality in Gallatin County. Boner resides in Dale in Hamilton County. Douglas also resided in Dale in Hamilton County. One occurrence witness resides in Dale in Hamilton County. Three

other occurrence witnesses reside in Eldorado in Saline County. One potential defense witness resides in Carrier Mills in Saline County, another resides in Henderson, Kentucky, and two others reside in Equality in Gallatin County. Plaintiff obtained, or has attempted to obtain, statements from 26 other persons, all of whom reside in Equality in Gallatin County. Plaintiff's two investigators reside in Marion in Williamson County. Douglas received medical treatment in Springfield in Sangamon County, Chicago in Cook County, Carbondale in Jackson County, and in Evansville, Indiana. Plaintiff's attorney has an office in Chicago in Cook County, and Peabody's attorney has an office in Belleville in St. Clair County. Bayer's attorney's office is in Harrisburg in Saline County.

The circuit court, in denying defendants' motions, stated:

> "For the reasons herein stated, at this time, defendants' motions are denied. However, said defendants may renew their motions at a later time as more discovery is conducted. At this time the Court, based on the record before it, feels that defendants' motions fail to overcome the substantial right of the plaintiff to select the forum in which to bring a case. Even though the accident happened in Gallatin County, and that there is some basis for a jury view of the property in question, it is undisputed that the plaintiff is not from Gallatin County. Also, the individual defendant is a lessee, only, of said property, and that the owner of the property is Peabody Coal Company, which does significant business in St. Clair County, as so admitted by defendants' counsel. Additionally, the medical treatment of the plaintiff occurred in Springfield, Illinois; Evansville, Indiana; and Chicago, Illinois. In addition, Defendant Peabody's counsel's office is located in St. Clair County. In essense [sic], St. Clair County is no more inconvenient for many witnesses than Gallatin County. Obviously, the ease of obtaining discovery regarding Peabody's exposure and documentary evidence from its headquarters in St. Louis or office in Fairview

Heights, Illinois would be more convenient in St. Clair County than Gallatin County. Likewise, in cases involving 'live' medical testimony, if that be the case, it is more convenient for said witnesses to appear in St. Clair County than Gallatin County.

Also, the statistics defendants cite from the Administrative Office of Illinois Courts are out-of-date and inaccurate, in that defendant cites 1984 statistics on case load and trial time. As of June 1st, 1989 this judge's docket is current in that out of the 420 cases assigned to this judge only 14 are older than 1987. Likewise, this Court is cognizant of the study done by the Director of the Administrative Office of the Illinois Courts, to-wit: *Circuit Court Case Load Summaries*, January through June 1988, Series C.L., Volume 1 Number 2, which points out that in civil jury cases over $15,000.00 St. Clair County has disposed of 121 percent of its docket, and that the average time to trial between filing and disposition of a jury case over $15,000.00 is 23.7 months in the above-said time frame.

Finally, this Court is not convinced that Gallatin County, due to its population, size, and potential problems in conducting a long civil jury trial in which Peabody Coal Company is well known throughout the county may lead to a situation where the plaintiff would have a difficult time in obtaining a jury panel."

In determining whether the circuit court abused its discretion, we must initially consider the private interest factors. The first such factor is the convenience to the witnesses and parties. Peabody argues most of the witnesses reside in or near Gallatin County and only its attorney is located in St. Clair County. The site of the incident in Gallatin County is approximately 130 miles from the St. Clair County seat, Belleville, and approximately 10 miles from the Gallatin County seat, Shawneetown. Peabody points out that both Hamilton County and Saline County, where some of the witnesses reside, including plaintiff, adjoin Gallatin County on the west side,

and are therefore closer to Gallatin County than St. Clair County. Witnesses in Hamilton County and Saline County are less than 30 miles from the Gallatin County courthouse, and approximately 110 miles from Belleville. Peabody further notes that Henderson, Kentucky, is less than 40 miles from Gallatin County, and over 150 miles from St. Clair County. Peabody asserts that the health care providers located in Evansville and Carbondale are closer to Gallatin County than St. Clair County.

Peabody also contends it may be obliged to present testimony regarding the community's knowledge of the property and its prior use. This type of testimony would necessarily come from citizens residing in the area of the property. Peabody argues St. Clair County would not be convenient to these potential witnesses.

Peabody additionally alleges that consideration should not be given to the accessibility of Shawneetown via roads or airports, as this could potentially shut the doors to most rural courthouses. Peabody notes, however, that Shawneetown is accessible to the airports in Evansville, Indiana, and Paducah, Kentucky. For all of these reasons, Peabody contends the convenience to the parties and witnesses weighs in favor of Gallatin County.

Boner, on the other hand, argues that the bulk of the witnesses (including herself), the investigators, all of the occurrence witnesses, Peabody's home offices, some of Peabody's witnesses, her attorney, Bayer's attorney, and all of the medical evidence are located in *neither* Gallatin County *nor* St. Clair County. Boner contends the 26 persons from Gallatin County she attempted to contact regarding the case may or may not present evidence. She states such a determination is entirely speculative, as there was no evidence before the circuit court that any of those persons have anything relevant to add to the case. Boner further asserts that even the witnesses from Gallatin County would only have about a two-hour drive

to St. Clair County. For those witnesses traveling a greater distance, Boner points out the accessibility of Belleville by air via St. Louis is better than the accessibility of Shawneetown by air.

We cannot say the circuit court abused its discretion in concluding that "St. Clair County is no more inconvenient for many witnesses than Gallatin County." As Boner points out, most of the witnesses reside in neither county. In particular, plaintiff does not reside in Gallatin County. Only Bayer and two possible defense witnesses actually reside in Gallatin County. Moreover, almost all of the medical evidence and witnesses are a considerable distance from Gallatin County.

Peabody speculates it may call many more witnesses from Gallatin County to testify regarding the community's knowledge and prior use of the abandoned mine. Peabody also notes that Boner has obtained or has attempted to obtain statements from 26 people in Gallatin County. This court may not reach its decision by speculating on how many more witnesses from Gallatin County may be called to testify. Peabody does not reveal what witnesses from Gallatin County it may call to testify. Furthermore, Boner is certainly entitled to contact and investigate any persons she feels may have information regarding her case without the fear that a mere investigation, in and of itself, will hamper her choice of forum. Because the circuit court had no evidence before it that any of these people would add anything relevant to the case, the circuit court did not abuse its discretion by giving little weight to the location of these possible witnesses.

Peabody and Boner dispute which county has better access to airport facilities and thus which is more convenient to out-of-county witnesses. Without reaching the merits of this debate, we conclude the circuit court did not place much emphasis on this consideration, and did

not abuse its discretion in doing so. *Griffith*, 136 Ill. 2d at 112.

Boner additionally asserts the circuit court properly considered the cost and inconvenience of the forum to the attorneys pursuant to *Baker v. Burlington Northern R.R. Co.* (1986), 149 Ill. App. 3d 674, 681. (See *Darnell v. Ralph Korte Equipment Co.* (1986), 144 Ill. App. 3d 564, 568-69.) Boner acknowledges that Gallatin County may be more convenient to Bayer's attorney, but she contends St. Clair County is more convenient to Peabody's attorney, as well as to her attorney, who can fly easily between Chicago and St. Louis. Peabody, however, cites *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, and *DeVries v. Bankers Life Co.* (1984), 128 Ill. App. 3d 647, for the proposition that the location of counsel is irrelevant for purposes of *forum non conveniens.*

We do not interpret *Wieser* to stand for the premise that the location of the parties' attorneys may *never* be considered in determining a *forum non conveniens* motion. While a circuit court may consider this factor, little weight should be accorded it. In our judgment, the circuit court in the case at bar did not place undue weight on this factor and did not abuse its discretion.

Another private interest factor to take into account is whether the jury would need to view the scene of the incident. Plaintiff's primary allegation in her complaint is that the property was used for swimming and diving so often and to such an extent that defendants should have known of, and taken measures to prohibit, such use. Boner also alleges defendants should have warned people of the dangers involved in swimming and diving on the property. Peabody contends its defense may consist of demonstrating that the mine was remote and secluded, public access to it was difficult, the water was unappealing for swimming and diving, and the hazards of swim-

ming and diving were obvious. Peabody argues that view of the premises by the jury would be essential to such a defense, and a trial in St. Clair County would prevent such a viewing and be unfair to Peabody. Boner, alternatively, asserts the site of the incident may not be appropriate for viewing by a jury because defendants presented no evidence the site is in the same condition, or is maintained in the same way, as it was on the date of the incident.

Although the circuit court indicated there was "some basis" for the jury to view the property, the court determined this did not outweigh other factors favoring Boner. It is within a circuit court's discretion to permit a jury to view the premises which are part of the subject matter of the litigation. (*Springer v. City of Chicago* (1891), 135 Ill. 552, 563-64; *Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 207.) Thus, a party does not have an absolute right to have the jury view the scene of an incident. A jury's view of the property "is permitted only to enable a jury to better understand and apply the evidence"; it does not constitute evidence. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 185.) A court may refuse to allow the jury to view the premises where the scene is adequately portrayed by photographs or diagrams, the jurors are familiar with the site, no useful purpose would be served by the viewing, or the viewing would be expensive or cause delay. (*Springer*, 135 Ill. at 564; *Munjal*, 138 Ill. App. 3d at 185.) Moreover, Boner's allegations regarding Peabody's lack of evidence that the property is in the same condition may be properly considered by the circuit court. Since we agree with the circuit court that other factors favored Boner's choice of forum, we cannot say the circuit court abused its discretion regarding jury view of the premises.

Boner suggests she could be denied a fair trial in Gallatin County. She points out Bayer resides in Gallatin

County and Peabody owns land in the county, including a lake formed from a flooded strip mine which is used for recreational purposes by the people of the county. Boner, however, does not reside in the county. She thus contends any juror bias will favor defendants.

Peabody argues it is irrelevant for *forum non conveniens* purposes whether Boner could obtain a fair jury panel in Gallatin County. (See *Satkowiak v. Chesapeake & Ohio Ry Co.* (1985), 106 Ill. 2d 224, 234.) Peabody asserts that section 2—1001(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1001(a)(2)) provides for making a separate determination about the potential prejudice against Boner in Gallatin County.

Peabody's assertion, however, is incorrect. This court in *Adkins* and *Torres* expressly stated that one of the factors to be considered on a *forum non conveniens* motion is the " 'relative advantages and obstacles to fair trial.' " (*Torres*, 98 Ill. 2d at 345, quoting *Gulf Oil*, 330 U.S. at 508, 91 L. Ed. at 1062, 67 S. Ct. at 843; *Adkins*, 54 Ill. 2d at 514.) Prior as well as subsequent decisions by the appellate court have also recognized and considered this factor. (*Baker*, 149 Ill. App. 3d at 678-79; *Darnell*, 144 Ill. App. 3d at 566; *Boston v. Rockford Memorial Hospital* (1986), 140 Ill. App. 3d 969, 973, 975; *Franklin v. FMC Corp.* (1986), 150 Ill. App. 3d 343, 349; *Wilson v. Illinois Power Co.* (1986), 148 Ill. App. 3d 503, 505-06; *Bjurstrom v. Commonwealth Edison Co.* (1986), 144 Ill. App. 3d 743, 748; *Walker v. Iowa Marine Repair Corp.* (1985), 132 Ill. App. 3d 621, 630-31.) Peabody is correct that our legislature has set forth a statutory procedure whereby a party may move to transfer venue if that party maintains it cannot receive a fair trial in a particular forum. (Ill. Rev. Stat. 1989, ch. 110, par. 2—100(a)(2).) Nevertheless, the existence of this statute does not preclude consideration on a *forum non*

*conveniens* motion of whether the parties can receive a fair trial in the forums.

In *Satkowiak*, which Peabody cites for support, plaintiff, a Michigan resident, filed suit in Cook County, Illinois, against the Chesapeake & Ohio Railroad Company (C&O) and Dow Chemical Company (Dow) for injuries plaintiff sustained while working for C&O on property Dow owned in Midland, Michigan. For several reasons, this court held that the circuit court abused its discretion by denying Dow's motion to dismiss based on *forum non conveniens*. Regarding the "fair trial" factor, this court stated:

> "[Plaintiff claims] that since Dow's corporate headquarters is located in Midland and since Dow is a major employer in that city, a plaintiff suing Dow could not receive a fair trial in Midland County. We do not believe that this is an appropriate factor for our consideration. It would reflect a lack of confidence in the courts of the State of Michigan for us to suggest that they could not insure a trial fair to all parties. This is a question which should be handled by the Michigan courts under Michigan law." (*Satkowiak*, 106 Ill. 2d at 234.)

We initially note that we find *Satkowiak* factually distinguishable from the case at bar. *Satkowiak* was an interstate *forum non conveniens* case where the plaintiff resided in Michigan and Michigan law was to be applied. Additional factors also set *Satkowiak* apart from the case at bar. (*Satkowiak*, 106 Ill. 2d at 234.) Furthermore, the above-quoted language from *Satkowiak* reflected this court's reluctance to hold that another State would not be able to provide a fair trial to the parties; this court concluded that such a determination should be made by the courts of that State. Consequently, the particular holding of *Satkowiak* was confined to the facts of that case.

Because of Gallatin County's population and size and Peabody's notoriety in the county, the circuit court determined Boner would have difficulty obtaining a fair trial in Gallatin County. We also add that Boner is not a resident of the county. We conclude that the circuit court did not abuse its discretion by considering this factor or by reaching this decision.

We must next address the public interest factors. These factors encompass the relative burdens on the forums, including court congestion and jury duty, as well as the relative interests of the forums in the litigation.

Peabody asserts that the case load of the court in St. Clair County is much higher than that of Gallatin County. The case loads of the circuit courts are reflected in *Circuit Court Caseload Summaries*, January-December 1988, series CL, vol. 1, no. 4, and *Circuit Court Calendar Management*, January-December 1988, series CF, vol. 1, no. 4, compiled by the Administrative Office of the Illinois Courts. According to those publications, between January and December 1988, in civil jury cases involving over $15,000, St. Clair County terminated 119.5% of its cases and Gallatin County terminated 250%. Likewise, the estimated average number of months to terminate a case was 24.6 in St. Clair County and 12.8 in Gallatin County. St. Clair County had a 74.1% backlog of cases while Gallatin County had a 50% backlog. Peabody additionally notes that the 1984 report the circuit court in the case at bar criticized as out-of-date was the only such report accessible to Peabody at the time.

Boner contends the circuit court acknowledged in its order that its particular court calendar was not congested. Peabody, however, alleges that the circuit judge cannot consider his or her personal case load in determining the congestion in the county's court system. Contrary to Peabody's allegation, in at least two cases the

appellate court has recognized and acknowledged that a trial court is in a better position than a reviewing court to assess the burdens on its own docket. *Baker,* 149 Ill. App. 3d at 679; *Darnell,* 144 Ill. App. 3d at 570.

Moreover, the 1989 statistics favor St. Clair County rather than Gallatin County. In St. Clair County, in civil jury cases involving over $15,000, between January and December 1989, 128.7% of the cases were terminated, an estimated average of 18.9 months was needed to terminate a case, and there was a 66.4% backlog of cases; in Gallatin County, those statistics were 200%, 42 months, and 85.7%, respectively. (*Circuit Court Caseload Summaries,* January-December 1989, series CL, vol. 2, no. 4; *Circuit Court Calendar Management,* January-December 1989, series CF, vol. 2, no. 4.) The circuit court's order was entered in June 1989, so the 1989 statistics were not yet available to the court or the parties at that time. Nevertheless, the circuit court's statement that its docket was current appears to be confirmed by these 1989 statistics. Consequently, the circuit court did not abuse its discretion by examining the status of its own docket and concluding that court congestion did not necessitate transferring the cause to Gallatin County.

Boner also points out that Peabody has offices and active mining operations in St. Clair County and thus Peabody's operations are quite extensive in that county. In contrast, the record does not disclose that Peabody owns in Gallatin County any property other than an unused strip mine. In her complaint, Boner alleges Peabody knew or should have known of previous diving accidents at other strip mine pits in Henry County, Williamson County and Kankakee County. For these reasons, Boner contends St. Clair County has as much interest as any other county in the result of the case. Peabody, on the other hand, argues that its doing business in St. Clair County is irrelevant because the doctrine of

*forum non conveniens* presupposes the existence of two forums with proper jurisdiction and venue.

We concur with Peabody that merely conducting business in St. Clair County does not affect the *forum non conveniens* issue because Peabody must have some contact with St. Clair County in order for venue and jurisdiction to be proper there. (See *Bland,* 116 Ill. 2d at 226.) Nevertheless, the extent and type of business Peabody conducts in St. Clair County are appropriate considerations for the circuit court on a *forum non conveniens* motion. Peabody has offices and conducts active mining in St. Clair County, so Peabody's activities in St. Clair County are by no means marginal. In addition, the incident in Gallatin County concerns the use of one of Peabody's abandoned mines, a mine for which Peabody is an absentee landlord. Certainly the inhabitants of St. Clair County have more than a passing curiosity in the resolution in this case. In addition, Peabody presumably pays its corresponding share of taxes in the county. We cannot say, therefore, that the residents or resources of St. Clair County would be overburdened with the trial of a case in which it has no interest.

Peabody argues that the circuit court considered improper factors in making its decision and therefore abused its discretion. In its order, the circuit court noted that "the individual defendant is a lessee, only, of said property." Peabody asserts that Bayer's status as a lessee of the property is not relevant to the *forum non conveniens* issue so long as he is a party in the suit. We agree with Peabody. The circuit court, however, did not completely disregard Bayer's involvement in the suit. Moreover, this was not a significant part of the circuit court's consideration of the *forum non conveniens* motion. Thus, this error does not warrant reversal of the circuit court's decision.

Peabody also contends no evidence was presented to support the circuit court's statement that "the ease of obtaining discovery regarding Peabody's exposure and documentary evidence from its headquarters in St. Louis or office in Fairview Heights, Illinois would be more convenient in St. Clair County." According to Peabody, although its Illinois division used to be headquartered in Fairview Heights, the division no longer exists.

The record clearly reveals that Peabody Holding Company, Inc., and Peabody Development Company have their home offices in St. Louis, Missouri. Peabody Coal Company admitted it has offices in St. Clair County. (Fairview Heights is located in St. Clair County.) The circuit court did not abuse its discretion by considering that some of the documentary evidence from Peabody might be obtained at these offices, and thus the location of the offices in or close to St. Clair County would make that forum more convenient for that purpose.

Peabody further contends the circuit court cannot thwart Peabody's right to transfer the cause or its right to seek review of the circuit court's order by providing that Peabody can renew its motion at a later date. Boner argues that the circuit court did not abuse its discretion by expressly granting defendants leave to renew their *forum non conveniens* motions after more discovery was conducted. Boner contends further discovery will reveal more precisely which witnesses and evidence will be presented at trial and thus clarify the *forum non conveniens* issue. Regardless of whether the circuit court allows Peabody to renew its motion, Peabody has the right to seek judicial review of the order the circuit court did enter regarding Peabody's *forum non conveniens* motion. Therefore, by providing Peabody with an opportunity to renew its motion, the circuit court did not deny any of Peabody's rights.

In conclusion, we emphasize that on a *forum non conveniens* motion the burden is on the defendant to show the relevant factors strongly favor transfer of the cause to another forum. The circuit court has broad discretion in deciding *forum non conveniens* motions, and the court's decision will not be overturned on review unless the court abused that discretion. Furthermore, plaintiff's choice of forum should be given substantial deference. In this case, Boner did not select her home forum in which to file suit, so her choice of forum is given less deference. Nevertheless, her choice of forum is still accorded considerable weight. We also point out that the forum to which Peabody would like this cause transferred is not Boner's home forum either. The circuit court correctly limited itself to consideration of the relevant facts. Most of the other parties and possible witnesses do not reside in, and none of the medical evidence is located in, Gallatin County. Boner may have difficulty obtaining a fair trial in Gallatin County, and the docket of the circuit court in Gallatin County is more congested than that of St. Clair County. Moreover, because Peabody conducts extensive mining in St. Clair County, the inhabitants of that county have an interest in the litigation. Consequently, the circuit court did not abuse its discretion in concluding that Peabody did not sustain its burden.

For the foregoing reasons, we reverse the order of the appellate court, affirm the order of the circuit court and remand the cause to the circuit court for further proceedings.

> *Appellate court reversed;*
> *circuit court affirmed;*
> *cause remanded.*

CHIEF JUSTICE MILLER, dissenting:

I would reverse the order of the circuit court denying defendant Peabody's motion for transfer of the present

action on grounds of *forum non conveniens*. Judged against the criteria that govern the resolution of such questions, the case at bar clearly qualifies as one in which transfer should be allowed. Accordingly, I dissent.

"*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration." (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514.) In determining whether an action should be transferred to a different forum, a court will consider the private interests of the litigants as well as matters pertaining to the interest of society at large. (*Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 105-06; *Torres v. Walsh* (1983), 98 Ill. 2d 338, 351.) Considerations relevant to this inquiry include the convenience of the parties and witnesses, the relative access to sources of proof, the interest of a local court in resolving matters of local concern, and, conversely, the burdens imposed on a congested forum and its residents by foreign litigation. (See *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 110-11, quoting *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843.) No single circumstance is necessarily dispositive, however, and each case must ultimately turn on its own set of facts. See *Satkowiak v. Chesapeake & Ohio Ry. Co.* (1985), 106 Ill. 2d 224, 228.

The majority concludes that defendant Peabody's transfer motion was properly denied because St. Clair County is the plaintiff's choice of forum and because many of the witnesses reside neither in St. Clair County nor in Gallatin County. In support of its decision, the majority also notes that Peabody engages in various activities in the forum county. In addition, the majority believes that the plaintiff would encounter difficulty in obtaining a fair trial in Gallatin County, and the majority

also finds that the docket in St. Clair County is less congested. The reasons cited by the majority, however, fail to sustain the court's conclusion.

The plaintiff is a resident of Dale, Hamilton County; Hamilton County lies directly northwest of Gallatin County, the site of the accident. The plaintiff elected to bring the present action in other than her home county, and her choice of forum is therefore entitled to less deference than it would otherwise enjoy. (See *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 367-68.) As the Supreme Court has explained:

> "When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."
> *Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 436, 102 S. Ct. 252, 266.

Thus, the plaintiff cannot be heard to argue that she has brought her action in a forum that is assumed to be convenient for her, and her selection of St. Clair County as the forum in the present case commands less weight than it would if she were a resident of that county. Nor, for that matter, is St. Clair County convenient for many of the other witnesses in the case. Like the plaintiff, most of the potential witnesses who do not reside in Gallatin County reside in neighboring counties, and thus live much closer to Shawneetown, the county seat of Gallatin County, than to Belleville, the county seat of St. Clair County. For the plaintiff and for most of the potential witnesses, Gallatin County clearly provides the more convenient forum.

As a related concern, I note that the majority's decision virtually eliminates any possibility that a jury will be able to view the scene of the accident during the

course of the trial. It must be acknowledged that a view of the premises would present no major difficulty if the case were tried in Gallatin County or a nearby county but would become exceedingly impracticable if the case is allowed to proceed more than 100 miles away in St. Clair County. The majority's decision effectively determines now that the jury will not view the accident site, even though that might become appropriate during trial.

The few circumstances offered by the majority in support of the plaintiff's selection of St. Clair County as the forum for the present action will normally be found in cases involving a question of *forum non conveniens*. As the majority must concede, a decision on grounds of *forum non conveniens* presupposes the existence of more than one forum having jurisdiction and venue over the cause of action. (See *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 506-07, 91 L. Ed. 1055, 1061, 67 S. Ct. 839, 842; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 515.) In the present case, defendant Peabody does not deny that its activities in St. Clair County are sufficient to establish jurisdiction and venue in that forum. Such contacts, however, are not by themselves sufficient to answer the issue raised here, which requires us to determine the convenience of the forum for purposes of the present action. See *Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 226.

Nonetheless, the majority believes that defendant Peabody's presence in St. Clair County might in some way facilitate the production of documentary evidence if the action is permitted to go forward there. This attempt to manufacture an additional consideration weighing in favor of the plaintiff's chosen forum is unconvincing. There is no indication in the present record that any documentary evidence relevant to the plaintiff's action is located in St. Clair County or, for that matter, in St.

Louis, Missouri, where Peabody also maintains offices. Assuming that pertinent evidence can be found in or near St. Clair County, I fail to see why the ease of producing those documents in that forum must outweigh the substantial inconvenience of requiring distant witnesses to travel from Gallatin and neighboring counties.

The majority also speculates that the plaintiff would encounter difficulty in obtaining a fair trial in Gallatin County. The majority's conclusion is without foundation. Nothing in the record indicates that potential jurors of Gallatin County would have any predisposition in favor of the defendants. Moreover, adequate remedies exist to protect the plaintiff's rights if a problem were to develop. If at some subsequent time the plaintiff feared that she would not be able to obtain a fair trial, she could then seek a change of venue on that ground. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1001(a)(2).) The present record, however, offers no support for the majority's conclusion that the circuit court of Gallatin County, or of an equally convenient, neighboring county in southeastern Illinois, could not ensure a fair trial of the plaintiff's action. See *Satkowiak v. Chesapeake & Ohio Ry. Co.* (1985), 106 Ill. 2d 224, 234.

Finally, the majority makes the surprising suggestion that the docket of the circuit court of St. Clair County is less congested than the docket of the circuit court of Gallatin County. The majority rests this conclusion on certain data that purportedly show that the backlog of civil jury cases involving more than $15,000 is greater in Gallatin County. The statistics relied on by the majority are derived in large part from computer projections, however, and the report supplying the information expressly states that the figures shown for less populous counties may be misrepresentative because of the relatively smaller caseloads in those circuits. (See *Circuit Court Calendar Management*, January-December 1989,

series CF, vol. 2, no. 4, at 5, n.*.) The difference between the dockets of the two counties is at once apparent from a review of the number of cases pending at year end. According to the compilations of civil jury cases involving more than $15,000, Gallatin County had 16 such cases pending at the end of 1988 and 14 such cases pending at the end of 1989; the figures for St. Clair County were 1,848 and 1,597, respectively. (*Circuit Court Caseload Summaries*, January-December 1988, series CL, vol. 1, no. 4; *Circuit Court Caseload Summaries*, January-December 1989, series CL, vol. 2, no. 4.) I am confident that the circuit court of Gallatin County would be able to accord the present action the time and attention it requires.

In sum, the record is devoid of any significant connection between the present controversy and St. Clair County, and the majority fails to present any persuasive reason for preferring the more distant forum. Today's decision ignores the "considerations of fundamental fairness and sensible and effective judicial administration" that animate the doctrine of *forum non conveniens* (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514), and I respectfully dissent.

JUSTICE HEIPLE joins in this dissent.