PEGGY A. BUETTNER, Mother and Next Friend of Aaron Buettner, a Minor, Plaintiff-Respondent, v. PARKE-DAVIS AND COMPANY *et al.*, Defendants-Petitioners.

Fifth District   No. 5—90—0489

Opinion filed July 8, 1991.—Rehearing denied August 14, 1991.

Rebecca R. Jackson and Sheila K. O'Malley, both of Bryan, Cave, McPheeters & McRoberts, of St. Louis, Missouri, for appellant St. Clement Hospital.

John L. McMullin and Beth Kamp Veath, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant Parke-Davis & Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Charlene A. Creemens, and Terrence K. McGrath, of counsel), for appellant Chong K. Park.

Michael S. Williams, of Cueto & Cueto, Ltd., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Peggy A. Buettner, mother and next friend of Aaron Buettner, a minor, brought an action in the circuit court of St. Clair County, sounding in medical malpractice against defendants Chong K. Park, M.D., and St. Clement Hospital, as well as products liability against defendant Parke-Davis & Company. Each of the above-named defendants filed a motion to transfer venue of this action, on grounds of *forum non conveniens*, to the circuit court of Randolph County. The circuit court denied defendants' motions to transfer venue by its order of June 28, 1990. Defendants petitioned this court for leave to appeal the June 28, 1990, order pursuant to Supreme Court Rule 306(a)(1)(ii) (134 Ill. 2d R. 306(a)(1)(ii)), which petition was granted on October 22, 1990.

Defendants contend that the circuit court abused its discretion in denying their motions to transfer venue from St. Clair County to Randolph County based on *forum non conveniens* because:

(1) all prospective witnesses to the activities complained-of either reside or work in Randolph County;

(2) all events surrounding the occurrence took place solely in Randolph County;

(3) all medical records and relevant documents concerning the occurrence and injuries complained of are located in Randolph County; and

(4) there is no significant connection between the plaintiff's cause of action and St. Clair County.

For reasons stated as follows, we affirm the denial by the circuit court of defendants' motions to transfer venue.

The record indicates that plaintiff and his parents are residents of Red Bud, Illinois, which is located in Randolph County. St. Clement's Hospital is located in Sparta, Illinois, also in Randolph County. Dr. Park is a resident of Waterloo in Monroe County, Illinois, and has his medical office in Red Bud, Randolph County, Illinois. Warner-Lambert, Inc., d/b/a Parke-Davis, Inc., a foreign corporation whose registered agent in Illinois is located in Cook County, stipulated, for purposes of this lawsuit only, that it is a resident of St. Clair County under sections 2—101 and 2—102 of the Code of Civil Procedure (see Ill. Rev. Stat. 1989, ch. 110, pars. 2—101, 2—102). We note at this juncture that under our venue statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—101), venue in the instant case would be proper in either St. Clair County, as Parke-Davis has stipulated residence therein under section 2—102 (Ill. Rev. Stat. 1989, ch. 110, par. 2—102), or Randolph County, as the situs of the alleged injury.

The record further indicates that St. Clair, Randolph, and Monroe Counties are each adjacent to the other. Affidavits were filed which certified that the distance from the St. Clair County courthouse in Belleville, Illinois, to Red Bud is 20.2 miles with driving time between the two locations of 23 minutes. In contrast, the distance between the Randolph County courthouse in Chester, Illinois, to Red Bud is 25.4 miles with driving time between Chester and Red Bud of approximately 31 minutes. The distance between Dr. Park's residence in Waterloo and the St. Clair County courthouse is 34 miles.

This controversy involves the physical and mental injury to Aaron Buettner suffered during his birth, allegedly as the result of the use of the drug Pitocin on Peggy Buettner to initiate her labor, as well as the alleged negligence of Dr. Park and St. Clement Hospital during

Peggy Buettner's labor and delivery on June 21 and 22, 1980. All prenatal care would have been received at Dr. Park's Red Bud office, and Peggy Buettner's labor and delivery occurred solely at St. Clement's Hospital. The attorneys for plaintiff and one of the defendants have law offices in St. Clair County. Attorneys for the remaining defendants have offices in St. Louis, Missouri, located to the immediate west of St. Clair County, Illinois, across the Mississippi River.

Aaron Buettner received his neonatal care at Cardinal Glennon Children's Hospital in St. Louis, Missouri. His treating family physician practices in Belleville. He attends a special school in St. Clair County.

The doctrine of *forum non conveniens* provides that a court may decline to exercise jurisdiction over a case if it is more convenient to try the case in another forum with appropriate jurisdiction and venue, and would serve the ends of justice. (*Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 527, 568 N.E.2d 883, 885, citing *Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 223, 506 N.E.2d 1291, 1294.) The doctrine is an equitable doctrine that assumes the existence of more than one forum with jurisdiction over the parties and the subject matter of a case. (*Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 105, 554 N.E.2d 209, 211, citing *Bland,* 116 Ill. 2d at 223, 506 N.E.2d at 1294.) This doctrine is applicable on an intrastate, as well as interstate, basis since the supreme court's decision in *Torres v. Walsh* (1983), 98 Ill. 2d 338, 456 N.E.2d 601. The party seeking transfer of venue on *forum non conveniens* grounds has the burden of showing that plaintiff's chosen forum will be unduly burdensome or inconvenient to him. *Lint v. Missouri Pacific R.R. Co.* (1990), 200 Ill. App. 3d 1047, 1049, 558 N.E.2d 702, 703.

■ In resolving both interstate as well as intrastate *forum non conveniens* questions, it is well established that the trial court must balance private-interest factors affecting the convenience to the litigants with the public-interest factors affecting the administration of the court. (*Griffith,* 136 Ill. 2d at 105, 554 N.E.2d at 211; *Bland,* 116 Ill. 2d at 223-24, 506 N.E.2d at 1294.) Private-interest factors to be considered are " 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.' " (*Torres,* 98 Ill. 2d at 345, 456 N.E.2d at 604, quoting *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508, 91 L. Ed. 1055,

1062, 67 S. Ct. 839, 843.) Relevant public-interest factors include the administrative difficulties caused when litigation is handled in congested venues, the unfairness of imposing jury duty upon residents of a county with no connection to the litigation, and an interest in having localized controversies decided locally. *Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 211, citing *McClain v. Illinois Central Gulf R.R. Co.* (1988), 121 Ill. 2d 278, 289-90, 520 N.E.2d 368, 372.

Our supreme court has also consistently held that a trial court is vested with broad discretion in ruling on a *forum non conveniens* motion and that its decision in this regard will be reversed only if it is shown that the court abused its discretion in weighing the relevant considerations. (*Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 211; *Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 118, 497 N.E.2d 745, 747.) Therefore, the sole issue before this court is whether the circuit court abused its discretion in denying defendants' motions to transfer venue to Randolph County. (*Boner*, 142 Ill. 2d at 527, 568 N.E.2d at 885.) Our inquiry will focus upon the relative convenience of the available forums, Randolph and St. Clair Counties. *Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73, 76, 457 N.E.2d 417, 418.

■ Of the private-interest factors, we will first examine convenience to the witnesses and parties. Defendants point out that the medical personnel and staff of St. Clement's Hospital who would be occurrence witnesses on the malpractice claim are located in or near Randolph County, the place of the alleged injury, and contend that it would be inconvenient for the parties and witnesses to attend the trial in St. Clair County. This same argument, regarding witnesses and sources of proof located in Randolph County rather than St. Clair County as the chosen forum, was specifically rejected by this court recently in *Lint v. Missouri Pacific R.R. Co.* (1990), 200 Ill. App. 3d 1047, 1050, 558 N.E.2d 702, 704. As similarly noted in *Lint*, all occurrence witnesses are Illinois residents and thus subject to compulsory process. Moreover, given the proximity of Randolph and Monroe Counties to St. Clair County, the courthouse in Belleville is no more inconvenient for many of the occurrence witnesses than the Randolph County courthouse in Chester. This court has previously noted in a number of decisions that it is most difficult to demonstrate inconvenience when the alternative forum adjoins the county in which venue otherwise properly was laid. (*Washington v. Illinois Power Co.* (1990), 200 Ill. App. 3d 939, 944, 558 N.E.2d 509, 512, citing *Daiber v. Montgomery County Mutual Fire Insurance Co.* (1989), 191 Ill. App. 3d 566, 568, 548 N.E.2d 17, 19; *Lint*, 200 Ill. App. 3d at 1050, 558

N.E.2d at 704; *Hoffmeister v. K mart Corp.* (1989), 181 Ill. App. 3d 739, 744, 537 N.E.2d 460, 463.) Our supreme court has also stated that "[w]hile mileage is but one indication of inconvenience [citation], the relatively short distance between the forum chosen by plaintiffs and that suggested by defendants makes it unlikely that trial in [the chosen forum] would be more costly or inconvenient." *Griffith*, 136 Ill. 2d at 113, 554 N.E.2d at 214.

Plaintiff notes with regard to the products liability claim that witnesses from Parke-Davis concerning the manufacture and distribution of Pitocin will outnumber the occurrence witnesses on the malpractice claim. These witnesses will necessarily be out of State, plaintiff argues, because this defendant has no offices, agents, facilities, or employees in either Randolph or St. Clair County, and it will be more convenient for them to testify at the St. Clair County courthouse because of its proximity to Lambert International Airport in St. Louis, Missouri, and Parks Airport in St. Clair County. In point of fact, it will be more convenient for out of State witnesses on both sides of the controversy to utilize the St. Louis and St. Clair County airports, and convenience of all witnesses, including those from out of State, is an appropriate consideration in determining both interstate and intrastate *forum non conveniens* questions. *Griffith*, 136 Ill. 2d at 112, 554 N.E.2d at 214.

Regarding plaintiff's proof of the nature, extent, and duration of his alleged injury, it would also be more convenient for Aaron Buettner's neonatal and current treating physicians, who are located in St. Louis, Missouri, and Belleville, respectively, or any of the teachers at his special school to testify in St. Clair County. We acknowledge that the supreme court has cautioned that undue weight should not be given to the fact that a plaintiff's treating physician or expert has an office in the plaintiff's chosen forum, for to do so would allow plaintiffs to frustrate the *forum non conveniens* principle by selecting witnesses from what would, in reality, be an inconvenient forum. (*Bland*, 116 Ill. 2d at 226, 506 N.E.2d at 1295-96; see also *Walsh v. Ramada Inns, Inc.* (1989), 194 Ill. App. 3d 945, 949, 551 N.E.2d 249, 252.) In the *Bland* case, two of the five treating physicians were located in the forum chosen by plaintiff; however, plaintiff's residence, as well as all of plaintiff's medical records of his hospital treatment and the nine witnesses for the defense, were located 100 miles away in the transferee forum, and the court specifically found that plaintiff's chosen forum had no relevant or practical connection with the litigation. In *Walsh*, the plaintiff obtained medical care in the chosen forum just weeks prior to filing the lawsuit, and this was the only connection to

the forum other than the maintenance of defendants' corporate parent's offices therein. The plaintiff in the *Walsh* case previously obtained his medical care in five other counties, the transferee county of plaintiff's residence and four counties adjacent thereto, and the chosen forum was located 125 miles from the transferee county. In the instant case, however, the chosen and transferee forums are adjacent to each other, and there are connections with St. Clair County other than a treating physician. Moreover, we believe in a case such as this, which alleges severe brain damage suffered at birth, plaintiff's utilization of metropolitan specialists in St. Louis and Belleville years before suit was filed cannot and should not be equated with forum shopping, and we hold that there would have been no error in according weight to the St. Clair County presence of these post-occurrence witnesses.

Moreover, while location of plaintiff's attorney in St. Clair County does not provide sufficient connection to establish the propriety of a forum in this county, we also note that St. Clair County would be the most convenient county for all of the defendants' attorneys to try this case, given their location in St. Louis and Belleville. A transfer to Randolph County for trial in Sparta, Illinois, would necessitate additional travel time and expenses for counsel in excess of those necessary for trial in Belleville, Illinois. This factor can properly be considered in weighing the convenience of the parties (*Hoffmeister v. K mart Corp.* (1989), 181 Ill. App. 3d 739, 743-44, 537 N.E.2d 460, 462; *Darnell v. Ralph Korte Equipment Co.* (1986), 144 Ill. App. 3d 564, 568-69, 494 N.E.2d 1206, 1209), though little weight should be accorded it. (*Boner*, 142 Ill. 2d at 534, 568 N.E.2d at 888.) We find no evidence in the record that the circuit court placed undue weight on this factor, but we also find that it militates against the defendants' desired forum.

Because of the nature of plaintiff's causes of action, it is unlikely that a jury view would be requested by any of the parties. Moreover, access to medical records at St. Clement's Hospital and Dr. Park's office would be unimpeded if the instant case remains in St. Clair County, given its proximity to their location in Randolph County. (See *Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 120, 497 N.E.2d 745, 748 (witnesses expected to testify and plaintiff's treatment records located in chosen forum and three counties adjacent to the chosen forum; accordingly, access to sources of proof not obstructed).) Finally, no other practical problems, such as inability to receive a fair trial in St. Clair County, have been raised by defendants in support of their motions to transfer venue from St. Clair County.

■ Concerning public-interest factors, it is appropriate to consider the congestion of court dockets as a factor of public concern (*Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 372, 456 N.E.2d 98, 104), and in doing so, it is proper to notice the Annual Reports of the Administrative Director to the Supreme Court of Illinois. (*Meyers*, 113 Ill. 2d at 122, 497 N.E.2d at 749.) Dr. Park submitted an affidavit, in the appendix to his brief to this court, of Richard Adkins, a statistical analyst in the Administrative Office of the Illinois Courts, and attached a 1989 table of statistics as the most recent and complete information for "law jury cases" filed and pending for 1987. The table provides that there are 1,597 cases pending in the St. Clair County circuit court while there are only 74 cases pending in the Randolph County circuit court and that the average time lapse in months for a case to be tried in St. Clair County was 35.9 months. Defendants also note that in *Wieser*, the supreme court commented on the increase in the number of cases filed in St. Clair County from 1975 to 1980 and the average lapse of time between the filing of the complaint and verdict in a law jury case filed in St. Clair County over that same time period, based on the annual report of Administrative Office of Illinois Courts, and stated that "[i]t is apparent that the judicial system of St. Clair County should not be further burdened by importing cases with which that jurisdiction has no connection." *Wieser*, 98 Ill. 2d at 373, 456 N.E.2d at 104.

Plaintiff concedes that St. Clair County has a larger docket than Randolph County but argues that the docket system in St. Clair County is based on the system that cases are set for trial when the parties are ready and so this case will be heard as soon as it is ready. Plaintiff urges, therefore, that this court cannot conclude from these statistics that the instant case will not go to trial for three more years. Plaintiff also argues that the complexity of the instant case will necessitate the completion of a large amount of discovery and so defendants' suggestion that the case can go to trial in Randolph County in only six months' time is illusory. We also note that 1989 statistics indicate that St. Clair County was able to dispose of 59 cases by verdict while Randolph County disposed of none.

Reviewing courts have often recognized and acknowledged that a trial court is in a better position to assess the burdens on its own docket. (*Boner*, 142 Ill. 2d at 539, 568 N.E.2d at 891, citing *Baker v. Burlington Northern R.R. Co.* (1986), 149 Ill. App. 3d 674, 500 N.E.2d 1113; *Darnell v. Ralph Korte Equipment Co.* (1986), 144 Ill. App. 3d 564, 494 N.E.2d 1206.) The supreme court in *Boner* specifically held that there was no abuse of discretion where a circuit court

examines the status of its own docket in assessing the court-congestion factor. (*Boner*, 142 Ill. 2d at 539, 568 N.E.2d at 891.) The circuit court apparently determined that congestion of its docket was not an obstacle in the instant case, and we have no grounds under the facts of the instant case to hold that this determination was an abuse of discretion.

■ Defendants next argue that as the situs of plaintiff's alleged injury was St. Clement's Hospital in Red Bud, Randolph County has an interest in having the controversy decided locally, while St. Clair County does not, and so it would be patently unfair to impose jury duty on the citizens of St. Clair County. Defendants note that the supreme court has expressed the desire that the forum include the place of injury, citing *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 456 N.E.2d 98. Moreover, defendants emphasize our recent decision in *Overturf v. Illinois Central Gulf R.R. Co.* (1989), 195 Ill. App. 3d 962, 553 N.E.2d 1, wherein, they contend, the denial of a motion to transfer venue based on *forum non conveniens* was reversed where the chosen forum was not the place of injury. In the *Overturf* case, the basis for reversal of the order denying the motion to transfer venue was a determination that the balance of the private- and public-interest factors strongly favored Franklin County, the transferee forum proposed by defendants. In *Overturf*, plaintiff and all potential witnesses resided in Franklin County, where the accident occurred, and all medical care was received in Franklin County, other than treatment received in Sangamon County. In addition, of the current treating physicians, two practiced in Franklin County and the third practiced in Jackson County, which adjoins Franklin County, and all of the individual defendants resided in Franklin County except one defendant who resided in the chosen forum, Madison County, which provided the only significant factual connection with the litigation. As plaintiff points out, Franklin and Madison Counties, the transferee and chosen forums, respectively, in the *Overturf* case, were not adjacent counties as they are in the instant case but some 75 miles and five counties distant from each other. While the situs of injuries allegedly involved in the lawsuit indeed provides the aspect of "a local interest in having localized controversies decided at home" (*Bland*, 116 Ill. 2d at 224, 506 N.E.2d at 1294), no single circumstance is necessarily dispositive, and each case must ultimately turn on its own set of facts. (*Satkowiak v. Chesapeake & Ohio Ry. Co.* (1985), 106 Ill. 2d 224, 228, 478 N.E.2d 370, 372.) Because the determination of whether the circuit court abused its discretion must turn on an examination of the private- and public-interest factors *in toto*, we cannot say that this

one public-interest factor, which indisputably militates in favor of the transferee county, renders the final decision an abuse of discretion.

Defendants, however, contend that there is no significant connection between the plaintiff's cause of action and St. Clair County and argues that a case should not be tried in a forum which has no significant factual connections with the occurrence, citing *Foster v. Chicago & North Western Transportation Co.* (1984), 102 Ill. 2d 378, 466 N.E.2d 198. We initially note that *Foster* was a case decided on the grounds of interstate rather than intrastate *forum non conveniens.* In *Foster*, a Federal Employers' Liability Action brought in Madison County, Illinois, involved a train accident and injury to plaintiff which occurred 270 miles away in Clinton, Iowa. All witnesses but one resided in Iowa and the only Illinois occurrence witness lived in a town close to Clinton, Iowa. In addition, all medical treatment was received in Iowa. The only connection with Madison County was that defendant's railroad tracks ran through it and plaintiff's attorney had his offices there. These connections were not compelling, the supreme court held, when balanced against the considerations supporting transfer to the Iowa forum. *Foster*, 102 Ill. 2d at 383, 466 N.E.2d at 200.

We note defendant Parke-Davis' stipulated residence in St. Clair County under the venue statute, which provides that a foreign corporation authorized to transact business in this State is a resident of any county in which it has its registered office or other office or is doing business. (Ill. Rev. Stat. 1989, ch. 110, par. 2—102(a).) We note in the record the affidavit of Jerry Davis, vice-president of sales for the Parke-Davis Division of the Warner-Lambert Company, which provides that in 1988 Parke-Davis had total worldwide sales of $1,085,100,000 and of that amount it made sales of $119,716 to customers in St. Clair County, Illinois. Defendant Parke-Davis also filed answers to plaintiff's interrogatories which listed 61 St. Clair County pharmacies, drug suppliers, and hospitals who were its customers in 1982 to 1983. We find, therefore, Parke-Davis' residence by way of its doing substantial business in St. Clair County gives the chosen forum a local interest in the litigation.

Further, count I of plaintiff's complaint alleges that the Pitocin administered to Peggy Buettner was in a defective, dangerous condition and that Parke-Davis knew or should have known that the product contained one or more of the following defects:

> (A.) When the drug Pitocin was administered to a woman in labor who was also in the condition of cephalopelvic disproportion, the result could be brain damage to the fetus.

(B.) The defendant failed to warn users of the drug Pitocin that when that drug was administered to a woman in labor who was also in the condition of cephalopelvic disproportion, the result could be brain damage to the fetus.

(C.) When the drug Pitocin was administered to a woman in labor, the result could be fetal hypoxia due to uteroplacental insufficiency.

(D.) The defendant failed to warn users of the drug Pitocin that when the drug was administered to a woman in labor, the result could be fetal hypoxia due to uteroplacental insufficiency which leads to late decelerations.

(E.) When the drug Pitocin was administered after late decelerations, the result could be fetal distress.

(F.) The defendant failed to warn users of the drug Pitocin that when that drug was administered to a woman in labor, the result could be fetal distress.

(G.) The defendant failed to warn users of the drug Pitocin that when that drug was administered to a woman in labor and fetal distress and/or late decelerations resulted, treatment with Pitocin should be immediately discontinued and an emergency cesarean section should be performed.

(H.) The defendant failed to warn users of the drug Pitocin that treatment with that same drug should only be carried out under the direct supervision of trained personnel.

(I.) When the drug Pitocin was administered to Peggy A. Buettner, it resulted in brain damage to Aaron Buettner.

(J.) The defendant failed to warn the medical community that Pitocin was not indicated for the elective induction of labor.

Plaintiff argues that the drug Pitocin is widely used in St. Clair County, more so than Randolph County due to the large difference in county population, and so a jury in St. Clair County has as much interest in deciding whether a drug is safe or warning adequate as a jury in Randolph County.

In *Washington v. Illinois Power Co.* (1990), 200 Ill. App. 3d 939, 558 N.E.2d 509, plaintiff's decedent was electrocuted by an uninsulated electrical wire maintained by defendant utility. This court found that as defendant utility provided electrical power to both the chosen and transferee counties, both counties had an interest in the controversy. (*Washington*, 200 Ill. App. 3d at 946, 558 N.E.2d at 513.) We believe that this public-interest factor weighs for both the chosen forum and the transferee forum. We cannot say, therefore, that St.

Clair County would be overburdened with the trial of a case in which it has no interest or significant factual connection.

■ As defendants correctly note, plaintiff's choice of forum is entitled to less deference when the plaintiff is not a resident of the chosen forum. (*Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 435-36, 102 S. Ct. 252, 266.) However, the supreme court noted in the *Griffith* case that where the chosen forum and the alternative forum suggested by defendants were located in adjacent counties, this fact distinguished it from those cases in which the supreme court found that the relevant factors strongly favored transfer. (*Griffith*, 136 Ill. 2d at 113, 554 N.E.2d at 214.) In deciding a *forum non conveniens* motion, a court is to take all the relevant factors into account, giving each factor, including plaintiff's choice of forum, proper deference or weight under the circumstances. (*Griffith*, 136 Ill. 2d at 107-08, 554 N.E.2d at 212.) While the foregoing public-interest factors may weigh in favor of both the chosen and transferee forums, or slightly in favor of Randolph County, the supreme court has specifically concluded that public-interest factors are not to be given dominant emphasis over considerations of the parties' convenience and the plaintiff's choice of forum, and the court has noted that the *forum non conveniens* doctrine, which is equitable in nature, allows courts to strike a balance between the convenience of the litigants and the efficient administration of justice. *Meyers*, 113 Ill. 2d at 122, 497 N.E.2d at 749.

In *Torres*, the supreme court emphasized six factors to be taken into consideration in making a decision on a *forum non conveniens* case: the availability of an alternate forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties. (*Torres*, 98 Ill. 2d at 351, 456 N.E.2d at 607.) The circuit court in the instant case specifically found, based on the six *Torres* factors, that denial of defendants' motions was proper. Although the first factor, availability of an alternative forum in Randolph County, would support defendants' motions, the remaining five factors, discussed earlier in this opinion, do not. The supreme court in the *Torres* decision also cautioned courts of this State that unless the above-stated factors "strongly favor the defendant," then plaintiff's choice of forum is entitled to deference, according to his or her statutory right, and defendant's inconvenience should not be considered. *Torres*, 98 Ill. 2d at 351, 456 N.E.2d at 607.

Under the supreme court's longstanding definition of abuse of discretion, the decision of the circuit court made in the exercise of its

discretion should not be set aside unless the opposite conclusion is clearly apparent. (*Bland*, 116 Ill. 2d at 233, 506 N.E.2d at 1298 (Goldenhersh, J., dissenting).) Under the foregoing analysis of the circuit court's decision by weighing the public- with the private-interest factors in support of each forum and under the six *Torres* factors, we cannot say that it was clearly apparent that defendants' motions should have been granted, and accordingly, no abuse of discretion here occurred. We affirm, therefore, the June 28, 1990, order of the circuit court of St. Clair County.

Affirmed.

HARRISON and LEWIS, JJ., concur.